334 So.2d 589 (1976)
Bruce E. JORDAN, Appellant,
v.
STATE of Florida, Appellee.
No. 47681.
Supreme Court of Florida.
June 23, 1976.
*590 James A. Gardner, Public Defender; and Dennis J. Plews, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen.; and Robert J. Landry, Asst. Atty. Gen., for appellee.
SUNDBERG, Justice.
This is a direct appeal from the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County. Jurisdiction lies under Article V, Section 3(b)(1), Florida Constitution, in that the trial court initially and directly passed on the validity of Subsection 828.04(1), Florida Statutes, by determining that it was not unconstitutionally vague.
Appellant was tried and convicted of violating Section 828.04(1), Florida Statutes.[1] He was sentenced to a 15-year prison term.
At the time of the alleged offense, September 12, 1974, appellant was living with Ms. Vicki Schieler and her 2-year old son, Brent, in Pinellas Park, Florida. (Ms. Schieler testified that the boy's father is one Rome Madison.) Appellant worked from 7:00 a.m. to 3:30 p.m., while the boy's mother was employed on a shift beginning at 3:30 p.m. and ending at midnight. During Ms. Schieler's absence from home, it was appellant's responsibility to look after Brent. The State's witnesses gave testimony tending to prove that the boy was fine early in the evening on that date, but that when Ms. Schieler arrived home shortly after midnight, he was bruised in the face, back and buttocks. Both eyes were blackened, the left eye was almost closed, and both arms were battered.
Ms. Schieler called the police shortly after midnight, and when they arrived, she went with an officer to the police station while Brent received medical attention. She repeated several times that she had left the child with babysitters whose names, residences, and present whereabouts were unknown to her, but she later admitted that she had left Brent in the care of the appellant.
The appellant was arrested and taken to police headquarters. He was given a Mirnada warning and nodded assent when asked whether he understood the rights contained therein and whether he wished to waive them by talking at that time. Shortly after 3:00 a.m., the appellant admitted to two police officers that during a three-hour period in the early evening, he had struck the boy in the face approximately four times with his hand and also spanked him with a belt approximately ten times. What had occasioned this "discipline" was Brent's refusal to cooperate when appellant tried to feed him supper. Appellant also said that the cuts and bruises in the region of the boy's left eye were caused by a fall in the bathtub while bathing. These statements were admitted into evidence at trial over the objection of defense *591 counsel that Jordan had never validly waived his Miranda rights.
At trial, the defense presented a witness who testified that he had brought two girls over to appellant's apartment on the evening in question and that the four of them had been there from 8:00 p.m. to about 11:15 p.m. During this time he saw no evidence that the boy had been mistreated. A neighbor testified that she had never seen appellant mistreat Brent, although she had often seen him "punish" the boy. Jordan testified that, on the evening in question, he had struck the boy with a belt one time, that some other injuries had been occasioned in the bathtub accident, and that when Ms. Schieler returned home after midnight and learned that Jordan had entertained female visitors, she became upset and vented her frustration by beating Brent when he awakened and did not return to sleep.
The points raised for our consideration on this appeal are (i) whether the trial court erred in denying a motion to dismiss the information on the ground that Section 828.04(1), Florida Statutes, is unconstitutionally vague; (ii) whether the trial court erred in overruling objections to the introduction at trial of appellant's alleged admissions; and (iii) whether it was error for the trial court not to grant a mistrial based on comments by the prosecutor during closing argument to the jury. We shall treat the points seriatim.
The statute here under consideration sets forth three distinct crimes, each of which is punishable as a second degree felony. The first is the act of unlawfully or willfully torturing, caging, or mutilating a child under the age of sixteen years. The second is the cruel, wanton, or malicious tormenting or punishing of such a child. The third is the intentional or knowing infliction of great bodily harm, permanent disability, or permanent disfigurement to a child under the age of 16 years while committing a battery upon the child. The description of these independent crimes is sufficiently clear that a person of ordinary intelligence can ascertain what conduct is proscribed "when measured by common understanding and practice." Zachary v. State, 269 So.2d 669 (Fla. 1972); Brock v. Hardie, 114 Fla. 670, 154 So. 690 (1934). This Court held when the predecessor to Section 828.04, Florida Statutes, was challenged that the phrase "unnecessarily and excessively chastises", which remains in subsection (2) of the instant statute, was sufficiently definite when viewed from this standpoint. Campbell v. State, 240 So.2d 298 (Fla. 1970). The Court's reasoning there applies with equal force to the language at issue here.
Additionally, appellant was accused of and tried for the second of the three aforementioned violations; viz., the cruel, wanton, or malicious tormenting or punishing of a child under the age of 16. The information charged that Jordan "did cruelly, wantonly, or with malice torment Brent Schieler ... by beating [him] about the face, thereby causing extensive bruises, abrasions, and contusions." The horribles of alleged statutory ambiguity paraded in appellant's brief involve the two other categories of activity denounced by the statute. Appellant lacks standing to assert the constitutional invalidity of descriptions of criminal conduct with which he has not been charged. See Lainhart v. Catts, 73 Fla. 735, 75 So. 47 (1917); McSween v. State Livestock Sanitary Bd., 97 Fla. 750, 122 So. 239 (1929).
Accordingly, we concur with the trial judge's conclusion that Section 828.04(1), Florida Statutes, is not unconstitutionally vague in that it does put persons of ordinary intelligence sufficiently on notice of what specific conduct it prohibits.
Appellant next asserts that he is entitled to a new trial because his confession statement which was admitted into evidence at trial was not properly admissible under Miranda v. Arizona, 384 U.S. 436, *592 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He maintains that acknowledgment of rights by a mere nod of the head does not constitute a waiver of those rights where there was no showing that they were waived either orally or in writing. He contends that such a position is buttressed by the provisions of Subsection 3.111(d)(4), Fla. R.Cr.P.[2]
Decisions rendered in this jurisdiction lead us to the conclusion that waiver of Miranda rights need not be by affirmative response or express waiver once the warning has been given. See Davis v. State, 275 So.2d 575 (1st D.C.A. Fla. 1973), cert. denied, 280 So.2d 684 (Fla. 1973); Hill v. State, 223 So.2d 548 (3d D.C.A. Fla. 1969). In United States v. Hayes, 385 F.2d 375, 377 (4th Cir.1967), the United States Court of Appeals for the Fourth Circuit made it clear that there is no constitutional requirement that a waiver is valid only if written and signed in the presence of two witnesses:
"Just as the mere signing of a boilerplate statement to the effect that a defendant is knowingly waiving his rights will not discharge the government's burden, so the mere absence of such a statement will not preclude as a matter of law the possibility of an effective waiver."
Under the teaching of the cited cases Jordan's confession would clearly be admissible, particularly when it is observed that the trial judge specifically found that Jordan was explained his rights and that he understood and appreciated them, indicating such understanding and appreciation by nodding his head. There was an implicit waiver in the act of the appellant in proceeding to give the statement after he had been given an explanation of his rights and had indicated comprehension of that explanation.
Appellant urges that Florida has imposed by rule a stricter requirement, but his reliance on Subsection 3.111(d)(4), Fla.R.Cr. P., as providing an independent ground for making the confession inadmissible is misplaced. Read out of context, the provisions of the Rule relied upon by appellant might lead to the result urged. But we find two flaws in appellant's attempted application of Rule 3.111 to the facts here. First, the title of the Rule is "Providing Counsel to Indigents." Reading the Rule in its entirety makes it clear that its provisions relate to the subject indicated in its title. The remedy for its violation would be to require a new trial with counsel available to represent the indigent. We do not understand that appellant complains about the lack or quality of his representation in the instant proceedings. Second, there is nothing in Rule 3.111 which calls for suppression of evidence, the result appellant seeks to achieve. Our rules must be sensibly construed. They are not to be given a strained interpretation or stretched to the limit of every conceivable construction conjured up by the fertile imagination of counsel. For the reasons stated, it was not error to admit the confession in evidence.
The prosecutorial comment during closing argument of which appellant complains is as follows:
"... The only reasonable explanation, reasonable hypothesis, is that the Defendant committed that beating and yet now he doesn't have the courage to stand before the Bench and take that first step toward rehabilitation and say, okay, I am sorry, I am sorry... ."
It is the position of appellant that this statement constituted comment upon defendant's insistence on trial by jury. It is argued that this is tantamount to prosecutorial reference to an accused's failure to *593 take the stand to testify and, therefore, a mistrial was mandated. In fact, the defendant took the stand in his own defense and repudiated the confession which had been introduced in evidence. The rule with respect to the prosecutor's statement here is exemplified in Dabney v. State, 119 Fla. 341, 161 So. 380 (1935), where this Court stated:
"... [T]he failure of the defendant to testify cannot be taken or considered as any admission against his interest; but, if a defendant voluntarily takes the stand and testifies as a witness in his own behalf, then he becomes subject to cross-examination as any other witness, and the prosecuting officer has the right to comment on his testimony, his manner and demeanor on the stand, the reasonableness or unreasonableness of his statements, and on the discrepancies which may appear in his testimony to the same extent as would be proper with reference to testimony of any other witness."
Taken in context, we do not believe that the comment by the prosecutor was unfair or improper. We do not construe the remark to be a comment "upon defendant's insistence on trial by jury," nor do we believe that the jury could have so construed it. In any event, cases cited by counsel concern comment upon failure to testify rather than upon insistence on jury trial and thus clearly are not on point.
The judgment and sentence are affirmed.
OVERTON, C.J., and ROBERTS, ADKINS, BOYD and HATCHETT, JJ., concur.
ENGLAND, J., dissents with an opinion.
ENGLAND, Justice (dissenting).
I respectfully, but strenously, dissent from my colleagues' initial determination that we have jurisdiction to review appellant's conviction. By finding that the parties have established jurisdiction in this case, the Court has effectively invited litigants to bypass the district courts in almost all cases.
On November 19, 1974, the day of Mr. Jordan's trial, his attorney filed a motion to dismiss the information against Jordan on five grounds relating to its sufficiency. As the trial was about to begin, defense counsel asked to approach the bench and this dialogue took place:
"DEFENSE COUNSEL: Your Honor, there is a Motion to Dismiss that I filed. I would like to amend it in two places instanter with the Court's permission. I will submit it without argument but I would like it amended to present to the Court.
Judge, on Line  Paragraph 4 as it reads here, where it says the Information is vague, I would like to scratch is and add the Information is, the Information and Florida Statute 828.04, and  where it says is, add and Florida Statute 828.04 are vague and ambiguous and doesn't apprise the Defendant of the charge.
THE COURT: What is the number?
DEFENSE COUNSEL: 828.04, and the way Paragraph 5 begins, the allegations of the Information and the  add in there  and Florida Statute 828.04 and a comma thereafter are so vague. Essentially, Judge, those are the additions I would make. The Motion to Dismiss attacks the Statute and the Information as being vague and ambiguous and one which the Defendant is being placed on trial for, and I would submit the Motion based upon  as it is written without any additional argument.
STATE'S ATTORNEY: Your Honor, the Information was filed September 19, 1974, and the Defendant arraigned October 4, 1974. The Information has not been amended since that time. The Court granted ten days within which to attack the sufficiency of the Information. It has now just been handed to me on trial date and I object to having to *594 research that Motion, and I object to it being heard.
DEFENSE COUNSEL: Judge, ten day motions are motions that attack the legal sufficiency but, shall we say, doesn't contemplate constitutional objections, objections which can be raised at any time.
THE COURT: I am aware of that. The State's objection to the Motion is overruled. The Court has not had the opportunity to read the Motion being entered by Defense Counsel, but it does question the constitutionality of the law in issue and the Defendant has the right to raise constitutionality issues. However, the Court disagrees with the Motion and the Court will deny the Motion."
The oral changes to the motion to dismiss were later penned onto the written motion. The effect of defense counsel's action was to assert a constitutional challenge to a statute in two of the five grounds asserted for dismissal. As a result of the court's denial of the motion to dismiss, defense counsel was then able to move the Second District to transfer the appeal to this Court, on the ground the trial judge initially and directly passed upon the validity of a state statute. Although it is not relevant to my view on this issue, the state did not contest the transfer.
I do not believe that Article V, Section 3(b)(1) of the Florida Constitution was designed for cases where the reliance of a party on a constitutional point is so minimal that trial counsel did not even deem it worthy of argument before the trial judge. This appears to have been an obvious attempt to inject an issue into the proceeding at the very last minute for the sole purpose of acquiring direct appellate review here. The frivolity of this issue is also apparent from the arguments before us. Appellant has primarily attacked the constitutionality of statutory provisions which are not involved in the case. As the majority recognizes, appellant even lacks standing to raise these issues.
In Evans v. Carroll, 104 So.2d 375 (Fla. 1958), we refused to entertain an appeal because "the constitutional questions posed are merely colorable, unrelated to the particular facts involved, and therefore present no substantial basis upon which an appeal will lie... ." The Court there compared its role under the predecessor of Article V, § 3(b)(1) to the role of federal courts on review of state decisions. A comparison of policy reasons dictated close scrutiny of jurisdictional allegations. The test there applied quite obviously pertains here:
"`We pierce the shell of the record presented for review sufficiently far to determine that our proper jurisdiction is not infringed upon or improper jurisdiction is not foisted upon us.'" 104 So.2d at 377.
The district courts were intended to be courts of last resort, and the finality of their jurisdiction should not be eroded by a litigant's decision to raise, as one among many points, an insubstantial constitutional question. By applying these same tests to requests for transfer, the district courts first, and this Court later, can preserve the proper constitutional role of each. On the facts here, Evans dictates that we return this case to the Second District Court of Appeal.
NOTES
[1] "Whoever unlawfully or willfully tortures, cages, or mutilates, or whoever cruelly, wantonly, or with malice, torments or punishes, any child under the age of sixteen years or whoever, in committing a battery upon any child under the age of sixteen years, intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement to such child is guilty of a felony of the second degree, punishable as provided in § 775.082, § 775.083, or § 775.084."

By Chapter 75-298, Laws of Florida, this statute was amended and renumbered 827.03. The changes effected by the new language are not material to our decision in this case.
[2] "A waiver of counsel made in court shall be of record; a waiver made out of court shall be in writing with not less than two attesting witnesses. Said witnesses shall attest the voluntary execution thereof."