526 So.2d 709 (1988)
Rose M. HERBERT, Appellant,
v.
STATE of Florida, Appellee.
No. 4-86-3025.
District Court of Appeal of Florida, Fourth District.
May 11, 1988.
Rehearing Denied June 8, 1988.
*710 Richard L. Jorandby, Public Defender, Mark A. Jones and Thomas F. Ball, III, Asst. Public Defenders, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Amy Lynn Diem, Asst. Atty. Gen., West Palm Beach, for appellee.
ANSTEAD, Judge.
After a jury trial, appellant was convicted of aggravated child abuse by malicious punishment for punishing her son with a belt. She was sentenced to two years in prison followed by ten years' probation. We reverse and remand for a new trial.
The circumstances of this case are simple and tragic. Rose Herbert is the mother of three children, aged 2, 4 and 7. She was employed as a landscape maintenance worker at Martin Downs. Chester Herbert is her 7-year-old son. At trial, Rose testified that Chester has presented serious disciplinary problems at school and that the school has threatened to kick him out and "send him to a retarded school ... [because he] can't listen and he won't sit down ... and he won't do his work." She stated that Chester had taken money from her on two or three previous occasions. On those occasions Rose had explained to him that she had only a little bit of money to take care of them and told him not to take money from her but if he needed something he should ask her. On May 19, 1986, Rose went shopping for food and diapers for the baby. She had $10 to last the several days until she received her paycheck. When she discovered that Chester (without her permission) had taken the $.50 she had left on her dresser, she started to whip him with a belt on his behind. However, when he wriggled away the belt struck him on the arms and shoulders. She testified that she didn't mean to bruise him and that she didn't view the punishment as child abuse. In her words:
I really don't think it was child abuse ... if I wouldn't a had any money for him to eat he'd a been somewhere starving or about dead ... or he wouldn't even had a place to ... lay his head. Then he tell `em I child abuse... .
Reacting to the prosecutor's attempt to impeach her testimony, the defendant exclaimed, "He's trying to make it like I'm about to kill my own kids. I love my kids." She told Officer Schwartz who interviewed and arrested her, she was not trying to bruise him but was only trying to make him behave.
The day after this incident, Chester complained to the teacher's aide about his bruises. The school principal called HRS who contacted the police. Patrolman Peggy Schwartz of the Stuart police interviewed Chester who told her that he had been beaten with a belt the previous evening by his mother after she had discovered that he had taken money from her. Officer Schwartz interviewed appellant and arranged to have photographs taken of Chester. Defendant was fully cooperative and related to Officer Schwartz the same narrative that Chester had provided. Chester was examined by Dr. Laguerre, who testified that he had seen bruises on Chester's shoulders, back and arms. He stated that the skin was not broken and the bruises were not very deep and would probably heal without any scars. He testified that *711 "[the beating] was not life threatening, [and] it was not dangerous to the child." It was his opinion, however, that the method of discipline used by defendant, whipping with a belt, was "not appropriate." Doctor Laguerre indicated on the form filled out for the child protection team that in his professional opinion, it was safe to return the child home.
At trial the state proffered testimony from both Officer Schwartz and Chester Herbert about a previous incident in October 1985 when Rose Herbert had punished Chester by whipping him with an electrical cord.[1] Defendant's counsel objected to the introduction of such evidence. He argued that his client had admitted that she had punished her son with a belt and the only question for the jury to decide was whether her actions constituted the crime of "malicious punishment." In addition, he contended that the introduction of testimony by Officer Schwartz, Doctor Laguerre, and Chester Herbert about the previous incident as well as the introduction of photos taken of Chester's bruises after that incident would unfairly prejudice the jury. The trial court overruled defendant's objection and allowed the evidence of the previous incident to be admitted on the basis of "motive," "intent," and "absence of mistake."

SUFFICIENCY OF THE EVIDENCE
Appellant first contends that the evidence is insufficient to sustain her conviction. She claims that her motion for judgment of acquittal should have been granted on two grounds: (1) the state failed to prove the degree of punishment which constitutes the crime of aggravated child abuse; and (2) the state failed to prove that appellant acted with malice in disciplining her son.
As has been noted, Rose Herbert was charged with a violation of section 827.03(1), Florida Statutes  aggravated child abuse for malicious punishment. Section 827.03(1) provides:
"Aggravated child abuse" is defined as one or more acts committed by a person who: (a) Commits aggravated battery on a child; (b) Willfully tortures a child; (c) Maliciously punishes a child; or (d) Willfully and unlawfully cages a child.
The pertinent portions of the Florida Standard Jury Instruction relevant to the charges here provide:
Before you can find the defendant guilty of (crime charged), the State must prove the following two elements beyond a reasonable doubt:
1. (Defendant)
b. [maliciously punished] (victim).
2. (Victim) was under the age of eighteen years.
Definitions:
"Maliciously" means wrongfully, intentionally, without legal justification or excuse.
In Faust v. State, 354 So.2d 866 (Fla. 1978) the supreme court affirmed the constitutional validity of section 827.03, Florida Statutes (1975), noting that "it conveys a sufficient warning to those subject to its provisions what conduct on their part will render them liable to its penalties." Nonetheless, the case law demonstrates that the courts have found little guidance in the language of the statute when asked to apply that statute to the discipline of children by their parents.
It is well established that a parent does not commit a crime by inflicting corporal punishment on her child if she remains within the legal limits of the exercise of that authority. Kama v. State, 507 So.2d 154 (Fla. 1st DCA 1987). Indeed, the corporal punishment of school children has long been approved by the Florida legislature and school boards have been prohibited from barring such punishment. See § 230.33(6)(c), Fla. Stat. (1985). The difficulty in defining "the legal limits" of someone's authority to impose discipline was confronted in Kama:
The determination that a parent, or one standing in the position of a parent, has overstepped the bounds of permissible *712 conduct in the discipline of a child pre-supposes either that the punishment was motivated by malice, and not by an educational purpose; that it was inflicted upon frivolous pretenses; that it was excessive, cruel or merciless; or that it has resulted in "great bodily harm, permanent disability, or permanent disfigurement."[2] Otherwise, persons in positions of authority over children would have no way to judge the propriety of their conduct under the criminal standard.
Kama, at 156. See also Schraffa v. State, 508 So.2d 755 (Fla. 4th DCA 1987), in which it was stated that malicious punishment may not necessarily involve physical injury. The cases construing section 827.03 reflect that the classification of a parent's disciplinary conduct as either permissible or not permissible (i.e., aggravated child abuse) has largely been done on a case-by-case basis. There have been no cases which state unequivocally that the whipping of a child with a belt per se constitutes aggravated child abuse. Nor is there one which says that such punishment can never constitute aggravated child abuse.
Most cases in which aggravated child abuse convictions were upheld involved far more egregious behavior and injuries than were involved here. For example, in Jordan v. State, 334 So.2d 589 (Fla. 1976), there was evidence that the defendant struck the 2-year-old child four times in the face and spanked him with a belt ten times because the child refused to eat his dinner, and was responsible for the boy's battered arms and two black eyes. Kama involved a defendant who had punished his 10-year-old stepson for pulling a knife on other children and had lied about it. According to the testimony, defendant had struck the child with his fist, kicked him in the stomach, hit him on the back with a belt, pushed him up against the wall, and picked him up off the floor by his ears. See also Waddy v. State, 355 So.2d 477 (Fla. 1st DCA 1978).
While it is probably true that a parent's use of a belt to spank a child, not unlike the corporal punishment approved for school children, is legally permissible and is not by itself the kind of punishment addressed in section 827.03,[3] we believe a jury question is raised by the evidence adduced in this case which indicated that appellant struck the child severely a number of times and on various parts of his body other than the buttocks. Appellant and her son both testified that appellant struck the boy more than five times. As the state points out, the doctor who examined the boy was unable to determine how many blows had been inflicted because there were several bruises superimposed upon one another. We believe this evidence was sufficient to support a finding of malicious punishment. Similarly, we believe the same evidence created a factual issue as to whether the appellant acted with malice. Cases like this should stand as a warning to those, parents and others alike, who quickly turn to corporal punishment as a solution to child discipline problems. It is apparent that there is a serious risk of "going too far" every time physical punishment is administered. The consequences now may include not only harm to the child but criminal prosecution as well.

ADMISSION OF EVIDENCE OF OTHER CRIMES
Appellant next asserts that it was error for the court to admit evidence of the October 1985 incident. Section 90.404(2)(a) of the Florida Evidence Code provides:
Similar fact evidence of other crimes, wrongs or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence *713 is relevant solely to prove bad character or propensity.
In Waddy v. State, the First District reversed the conviction of a defendant charged with child abuse based on the improper admission of testimony by the child's mother as to prior batteries inflicted on the child by the defendant:
The mother of the child abused was granted immunity in this case, as well as the Washington County case, in exchange for her testimony against Waddy. She testified that Waddy committed the batteries upon her child on 2 May and then was permitted to relate numerous other batteries which occurred both before and after 2 May for which Waddy was not charged. There were eyewitnesses to Waddy's acts. We fail to see the necessity of the similar fact evidence to prove an element of the crime charged, identity of Waddy or common scheme or plan. The similar fact evidence was irrelevant. As we view it, this evidence was introduced to show Waddy was of bad character and propensities. In Williams v. State, 110 So.2d 654 (Fla. 1959), our Supreme Court held that such evidence was inadmissible.
355 So.2d at 478.
In the case at bar, the facts of the incident were never denied by the appellant and were undisputed at trial. The jury heard consistent testimony about the incident from both appellant and her 7-year-old son. Both parties agree that appellant had used a belt to punish the boy for stealing money from her. There was no dispute at trial as to the identity, motive, or knowledge of appellant in beating her son with a belt in May. The only issue in dispute at trial was whether or not the beating constituted the crime of "aggravated child abuse by malicious punishment." Boiled down to its essence, the only issue to be decided by the jury was whether the appellant had gone "too far" in punishing the child on this specific occasion. Appellant correctly asserts that she was not being tried for abuse stemming from the October incident or of continued or repeated abuse. We believe the holding in Waddy applies here. The prior beating was simply not relevant to the issue of whether this particular beating was so severe as to constitute aggravated child abuse by malicious punishment.
In addition, we agree with appellant's objection on section 90.403 grounds; i.e., that the prejudicial effect of the evidence of the prior incident in October clearly out-weighed any probative value that it offered. On the basis of the May incident alone, this case presents a close question of child abuse. It is natural that the jury would be deeply influenced by the testimony and photos describing the boy's previous whipping in October. The record reflects that the testimony by Chester, Officer Schwartz and Dr. Laguerre and Rose Herbert about the prior incident comprised a significant portion of the total trial testimony. In addition, the photos shown to the jury which were taken of the collateral event in October reflected far more apparent and serious injuries. The state contends that admission of evidence of the October incident was harmless because the evidence of guilt is overwhelming. We cannot agree. When the standard articulated in Waddy is applied to the facts of the case at bar, it is impossible to conclude that the error was harmless. "A violation of the Williams rule may be considered harmless only where proof of guilt is clear and convincing so that even without the collateral evidence introduced in violation of Williams, the defendant would clearly have been found guilty." Bricker v. State, 462 So.2d 556, 559 (Fla. 3d DCA 1985) (emphasis added). Our review of the record reflects that the proof that appellant's conduct in May constituted "aggravated child abuse" falls far short of clear and convincing.
Had the charges here involved a continuing pattern of abuse or specifically included the prior incident we would have a different question. Such evidence could ordinarily also be properly utilized in determining an appropriate sentence for the May incident, if appellant is convicted. We acknowledge the difficulties inherent in the review of cases involving the alleged abuse of children. Echoing what are probably *714 the feelings of all of us who must review these cases, Judge Mills aptly concluded the majority opinion in Waddy by observing:
Let the writer of this opinion say that to him child abuse is one of the most heinous of crimes. But let the writer of this opinion also say that the most despicable wretch that walks the face of the earth is presumed innocent until proved guilty and is entitled to a fair trial.
355 So.2d at 479.
In accord with the above we reverse and remand for a new trial.
GUNTHER, J., concurs.
GLICKSTEIN, J., concurs in part and dissents in part with opinion.
GLICKSTEIN, Judge, concurring in part and dissenting in part.

INTRODUCTION
Emerson said somewhere that great men and great nations have been, not boasters and buffoons, but perceivers of the terrors of life who manned themselves to face it. Alas, among the poor and the ignorant  the majority of the world's people  violence is a commonplace terror of life. The mother and child here are not strangers to poverty.
There is research evidence that treatment approaches intended to improve parents' functioning in cases of child abuse and neglect are relatively ineffective. Four multi-year evaluation studies, which reviewed a total of 89 demonstration treatment programs involving 3,253 families, reveal this. See Cohn and Daro, Is Treatment Too Late! What Ten Years of Evaluative Research Tell Us, 2 Child Abuse and Neglect 433 (1987). Accordingly, resources should be devoted less to after-the-fact intervention and more to prevention. Id. at 440. Cohn and Daro quote Dr. Brandt Steele's Notes on the Lasting Effects of Early Child Abuse, 10 Child Abuse & Neglect 283 (1986) as follows:
We want to prevent not only the immediate, painful misery of children who are subjected to maltreatment, but also to prevent those lifelong disastrous consequences that are more and more difficult to treat as the person grows older. To work toward the prevention of all these unhappy lasting effects of maltreatment is one of the most valuable things we can do to benefit our fellow human beings.

SUFFICIENCY OF THE EVIDENCE
I agree with the majority that in the instant case there is sufficient evidence to uphold the mother's conviction. I write to summarize for bench and bar what child advocates and the health community have learned about the effect of corporal punishment.[4]
Considering the benefits of child protection, not merely to the child but also to society, it is mind boggling that, in spite of man's long history of maltreatment of children, public concern has only recently blossomed. Is it not incredible that the now familiar phrase, "in the best interest of the child" first appeared in a Cardozo opinion, as recently as 1925? See Finlay v. Finlay, 240 N.Y. 429, 148 N.E. 624, 626 (1925).
The concept of "reasonable corporal punishment"[5] *715 is one small step in recognition of the fact of which Dr. Henry Kempe constantly reminds us: "It is easier to build children than to repair men." Dean Herman has pointed out that although the courts nearly unanimously demand that parental punishment be reasonable for the parent to avoid criminal conviction, and most states have child abuse statutes, the standard is vague, and is indeed left to the jury to divine as it determines, as a question of fact, whether the standard has been violated. Herman, A Statutory Proposal to Prohibit the Infliction of Violence Upon Children, 19 Family Law Quarterly 1, 11 (1985). He observes that Switzerland and Sweden have criminalized all corporal punishment. In Sweden's case, parliament passed, in 1979 a statute eliminating parental use of corporal punishment by a vote of 259 to 9. Whereas in 1965 only 35 percent of Swedish poll respondents disfavored corporal punishment of children, the corresponding figure in 1981 was 71 percent. Id. at 16-17. The reasons for such statutes include evidence that the beaten child internalizes the parental conduct and acts the same way toward others throughout life; the parent beating the child often is using the child as the object of displaced aggression; corporal punishment is ineffective in eliminating undesired behaviors; and a society's approval of corporal punishment of children is the foundation for occurrence of child abuse. Id., passim.
Civilized societies have largely succeeded in prohibiting institutional corporal punishment, albeit it persists in the statutes of Florida; the statute involved in the instant case at least to a degree curbs excesses by parents.

THE EVIDENCE OF THE CHILD'S PRIOR BEATING
The literature is rife with discussions of Federal Rule of Evidence 404(b), and the resulting admissibility of testimony and evidence of the defendant's prior mistreatment of the same or other children. See, e.g., Foundations of Child Advocacy 112-113 (D. Bross & L. Michaels, eds. 1987); Mele, Frequently Litigated Issues in Criminal Cases Involving Family Violence, in National Association of Counsel for Children, Multi-disciplinary Advocacy for Mistreated Children 264, 266-268 (1984); Bross and Kanee, Profiles, Syndromes, and Pattern Evidence in Child Abuse and Neglect, in Representing Children: Current Issues in Law, Medicine, Mental Health and Protective Services (1987); Comment, Other Crimes Evidence to Prove the Corpus Delecti of a Child Sexual Case, 40 U. Miami L.Rev. 217 (1985).
Florida's version of the above mentioned federal rule, section 90.404(2)(a), Florida Evidence Code, is as follows:
(2) Other Crimes, Wrongs, Or Acts.
(a) Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
This language varies from that of the federal rule, but in substance it is the same.
According to the literature, the discretion of the court in determining the admissibility of evidence of a parent's or other adult's prior maltreatment of children is limited primarily only by the companion rule  Federal Rule 403, corresponding to section 90.403, Florida Evidence Code  which provides that relevant evidence is inadmissible if its probative value is substantially out-weighed by the danger of prejudice, confusion or waste of time. Such prior wrongful acts evidence is often admitted in child abuse cases to show motive, though there appears to be a trend away from particularization of the precise ground for admission.
*716 The considerations most often said by cases and commentators to be involved in the trial court's exercise of discretion as to admission of prior acts evidence are (1) probative worth; (2) need to prove the issue; (3) sufficiency of other evidence; (4) availability of other proof; (5) strength of the proof of the prior crime; (6) prejudice, which often involves the principle of "comparative enormity"  exclusion is favored if the prior act is more heinous than the crime charged; (7) time required to prove the other crime; (8) the nature of the proof of the other crime; (9) motivation of the offense; and (10) other rule 403 factors. 22 C. Wright & K. Graham, Federal Practice and Procedure § 5250 (1977).
Here the majority does not discuss any of the above factors. Regrettably, they follow an early decision of the First District Court of Appeal, and neglect to mention Coleman v. State, 485 So.2d 1342 (Fla. 1st DCA 1986) ("similar fact evidence has been continuously upheld by the courts of the state as a means of showing a pattern of criminality.") See also Coleman v. State, 484 So.2d 624 (Fla. 1st DCA 1986) (Collateral fact evidence admissible because sufficiently similar to instant fact situation to share uniqueness about perpetrator or manner in which offense was committed; also relevant to case at hand). In King v. State, 436 So.2d 50, 55 (Fla. 1983), cert. denied, 466 U.S. 909, 104 S.Ct. 1690, 80 L.Ed.2d 163 (1984), admission of evidence of a beating administered 23 days before the killing to show premeditation was found to be permissible.
Wright and Graham state in their above cited treatise that "[t]he `intent' exception [under Federal Rule of Evidence 404(b)] should be read broadly so as to cover any required mental element of the crime whether malice or knowledge or the absence of mistake, accident, duress or intoxication." Id. at § 5242. They suggest that use of prior act evidence to show a mental element of the offense charged does not require an inference as to the accused's character or conduct, but is justifiable simply on the basis of the theory of probability. Id.
I think in the instant case the trial court acted well within its discretion in admitting evidence of the prior beating administered to the same child by the accused. Moreover, a plethora of cases from foreign jurisdictions supports the conclusion that defendant's prior wrong act is evidence of malice in the instant offense. See People v. Weisberg, 265 Cal. App.2d 476, 71 Cal. Rptr. 157 (Ct.App. 1968); People v. Drumheller, 15 Ill. App.3d 418, 304 N.E.2d 455 (Ct.App. 1973); State v. Tornquist, 254 Iowa 1135, 120 N.W.2d 483 (1963); Commonwealth v. Labbe, 6 Mass. App. Ct. 73, 373 N.E.2d 227 (Ct.App. 1978); People v. Barnard, 93 Mich. App. 590, 286 N.W.2d 870 (Ct.App. 1979); Bludsworth v. State, 98 Nev. 289, 646 P.2d 558 (1982); State v. Mapp, 45 N.C. App. 574, 264 S.E.2d 348 (Ct.App. 1980).
I would affirm.
NOTES
[1] Rose Herbert was not charged in the October incident. She entered into an agreement with HRS to get counseling and to terminate her relationship with her current boyfriend.
[2] Citing the language of section 827.03, Florida Statutes (1975), and its predecessor, section 784.045.
[3] The other portions of section 827.03 prohibit the "willful torturing" and "willful and unlawful caging" of children. This would seem to indicate that the legislature intended to proscribe conduct far more brutal than the spanking of a child by a parent.
[4] I have been fortunate in the last six years to have access to the following mother lodes of information: The C. Henry Kempe Center in Denver, the ABA's Family Law Section, the ABA's National Legal Resource Center for Child Advocacy and Protection, the National Council of Juvenile and Family Court Judges, the U.S. House Select Committee on Children, Youth and Families and The International Society for Prevention of Child Abuse and Neglect. On the instant topic, I would commend to the reader the following publications: Kempe and Heller, The Battered Child (4th ed. 1987); Herman, A Statutory Proposal to Prohibit the Infliction of Violence Upon Children, 19 Family Law Quarterly 1 (1985); Horowitz and Davidson, Legal Rights of Children, § 12.08 (1984 & Supp. 1987); Juvenile and Family Law Digest 1987 Cumulative Index of Rulings; Violence and Abuse of American Families, Hearing before the Select Committee on Children, Youth and Families, 98th Cong.2d Sess. (1984); and Child Abuse and Neglect: The International Journal of the International Society for the Prevention of Child Abuse and Neglect.
[5] See Seyler v. Commonwealth, 97 Pa.Cmwlth. 302, 509 A.2d 438, 439 (1986); Matter of Shawn, G., 76 A.D.2d 886, 428 N.Y.S.2d 713 (1980); and People in Interest of M.A.L., 592 P.2d 415, 417 (Colo.Ct.App. 1976). See, also, a discussion of Colorado's 1980 Child Abuse Statute in People v. Noble, 635 P.2d 203, 209-210 (Colo. 1981).