537 So.2d 1128 (1989)
STATE of Florida, Appellant,
v.
Lisa HARRIS and Perry Williams, Appellees.
No. 88-1311.
District Court of Appeal of Florida, Second District.
February 3, 1989.
*1129 Robert A. Butterworth, Atty. Gen., Tallahassee, and Katherine V. Blanco, Asst. Atty. Gen., Tampa, for appellant.
James Marion Moorman, Public Defender, and Jennifer Y. Fogle, Asst. Public Defender, Bartow, for appellees.
LEHAN, Judge.
This is an appeal by the state from the dismissal of count I of the information against defendants. Under count I it is alleged that defendants were guilty of aggravated child abuse through willful torture, a second degree felony under section 827.03(1)(b), Florida Statutes (1987). The state's theory is that defendants violated section 827.03(1)(b) by having failed to seek prompt and timely medical attention for a burned child. We affirm. See Jakubczak v. State, 425 So.2d 187, 189 (Fla. 3d DCA 1983) ("the legislature intended to punish under section 827.03 only acts of commission done with specific intent.").
That the legislature did not intend that negligent omissions be encompassed within section 827.03(1)(b) was shown, Jakubczak reasoned, by the facts that an earlier version of the statute had been amended to omit from its provisions offenses resulting from negligence and that other portions of chapter 827, i.e., sections 827.04 and 827.05, which define particular types of child abuse offenses, do, in contrast to section 827.03, specifically encompass within their descriptions of offenses failures to do that which is required to be done. Id. at 188-89.
The alleged conduct of defendants appears to be squarely encompassed within the type of offense described in either section 827.04(1) or 827.04(2), each of which refers to "culpable negligence." Under these circumstances and even if section 827.03(1)(b) could, contrary to Jakubczak, be considered to encompass negligent omissions, section 827.04(1) or 827.04(2) should apply to the exclusion of 827.03(1)(b).
It is a well settled rule of statutory construction .. . that a special statute covering a particular subject matter is controlling over a general statutory provision covering the same and other subjects in general terms. In this situation "`the statute relating to the particular part of the general subject will operate as an exception to or qualification of the general terms of the more comprehensive statute to the extent only of the repugnancy, if any.'"
Adams v. Culver, 111 So.2d 665, 667 (Fla. 1959) (quoting Stewart v. DeLand-Lake Helen, 71 Fla. 158, 177, 71 So. 42, 47 (1916), quoting in turn State ex rel. Loftin v. McMillan, 55 Fla. 246, 250, 45 So. 882, 884 (1908)).
It also appears of particular significance that in 1984, after the Third District Court of Appeal's 1983 decision in Jakubczak, the legislature clarified section 827.03 to provide specifically that each kind of aggravated child abuse defined therein must consist of "acts." There was no change to the provisions of section 827.03(1)(b) concerning aggravated child abuse through willful torture, nor was there any change to the definition of "torture" in section 827.01(3). Ch. 84-238, § 1, Laws of Fla. Jakubczak had specifically concluded that "the legislature intended to punish under section 827.03 only acts of commission... ." 425 So.2d at 189. Thus, the legislature can be taken to have concurred with Jakubczak's perception of legislative intent. "[W]here a provision has received a definite judicial construction, the subsequent reenactment of that provision by the legislature may be held to amount to legislative approval of the judicial construction." 49 Fla.Jur.2d Statutes § 166 [p. 200] (1984).
*1130 In response to a question from the state in its brief and from the trial court in its order about the failure of Jakubczak to recognize that section 827.01(3) defines "torture" to include an omission or neglect, we note that there appears to be no way to fully, i.e., without any logical doubt, square Jakubczak with section 827.01(3). But in balancing the reasoning used in Jakubczak, together with our additional reasoning in this opinion, against the reasoning which would be involved by using the definition in section 827.01(3) to arrive at a result contrary to that of Jakubczak, we conclude that section 827.01(3) should not control. To follow the definition in section 827.01(3) would result in an incongruity with otherwise manifested legislative intent. See Ferre v. State ex rel. Reno, 478 So.2d 1077, 1082 (Fla. 3d DCA 1985), aff'd, 494 So.2d 214 (1986), cert. denied, 481 U.S. 1037, 107 S.Ct. 1973, 95 L.Ed.2d 814 (1987) ("when the use of a statutory definition results in a manifest incongruity ... that definition should not be employed.").
Accordingly, consistent in effect with Jakubczak, we do not conclude that the legislature meant to encompass within section 827.03(1)(b) a meaning of the word "torture," much less the words "willful torture," so different from that understood in common parlance. Common parlance would not, we believe, include within the term "willful torture" negligent failure to seek medical attention for an injured person. "Torture" may be commonly defined as "to inflict intense pain to body or mind for purposes of punishment ... or for sadistic pleasure." Black's Law Dictionary 1335 (5th ed. 1979).
Also, while, technically, the facts that section 827.03(1)(b) addresses willful torture and section 827.01(3) only defines "torture" would not logically justify ignoring the section 827.01(3) definition, the inclusion of the word "willfully" in section 827.03(1)(b) may be taken to indicate that the legislature meant to criminalize in that section something worse than what was defined in section 827.01(3). And, of course, penal statutes are to be strictly construed. See Graham v. State, 472 So.2d 464, 465 (Fla. 1985).
In addition, even if, contrary to Jakubczak, section 827.03(1)(b) was intended to encompass omissions and neglects and to not be limited to acts of commission, that section, by requiring willfulness, requires specific intent. Jakubczak, 425 So.2d at 189. The alleged facts of this case would in our view not support a finding that the appellees had the specific intent to torture the child, whatever definition of the word "torture" is used.
AFFIRMED.
DANAHY, A.C.J., and PATTERSON, J., concur.