579 So.2d 816 (1991)
Mary NICHOLSON, Appellant,
v.
STATE of Florida, Appellee.
No. 90-01195.
District Court of Appeal of Florida, First District.
May 9, 1991.
*817 Barbara M. Linthicum, Public Defender, and Glen P. Gifford, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Bradley R. Bischoff, Asst. Atty. Gen., Tallahassee, for appellee.
BOOTH, Judge.
This cause is before us on appeal from appellant's conviction of first-degree felony murder and aggravated child abuse. Appellant argues that: (1) the trial court erred in denying her motion for judgment of acquittal because the evidence failed to establish that the victim died from either malicious torture or willful punishment; and (2) the trial court committed fundamental error in instructing the jury that aggravated child abuse by willful torture under Section 827.03(1)(b), Florida Statutes, includes acts of negligence or omission. After careful consideration, we affirm as to each issue.
On February 8, 1988, four-year-old Kimberly McZinc died of starvation. Kimberly's mother, Darlene Jackson, was indicted for first-degree murder and aggravated child abuse. She subsequently pled nolo contendere to third-degree murder and simple child abuse.
Ms. Jackson, a native of Charleston, South Carolina, moved to New York City in 1979, where she met Kenneth McZinc, who fathered her child, Kimberly, born March 17, 1983. After Kimberly's birth, Ms. Jackson experienced a renewed interest in religion and became "born again."
In April 1986, Ms. Jackson met Hope Renwick. Ms. Renwick shared with Ms. Jackson her view that life on earth was a continuous struggle between the forces of God and Satan. In the summer of 1986, Ms. Jackson and Kimberly paid their first visit to Ms. Renwick's church. Ms. Jackson had been told that occasionally people became sick during the service and that such sickness was a sign of the cleansing of demons. Kimberly spit up in church, drawing the attention of other worshipers, who chanted "hallelujah." Afterwards, Ms. Jackson placed more credence in Ms. Renwick's accounts of spiritual warfare. Ms. Jackson began to dwell on concepts such as Satan and oppression by demons.
Ms. Renwick introduced Ms. Jackson to appellant. Appellant and Ms. Renwick began to interpret dreams which Ms. Jackson had been having. Appellant suggested *818 that Ms. Jackson's dreams signified that Kimberly was being pulled toward evil. Ms. Jackson began to speak with appellant more frequently.
In July of 1987, Ms. Jackson took Kimberly to appellant's home in Pace, Florida. Ms. Jackson kept a diary that chronicled her participation in religious activities with appellant. The diary reflected that appellant provided specific directions to Ms. Jackson for Kimberly's discipline, which were based upon appellant's "prophecies from God."
Appellant persuaded Ms. Jackson that the evil spirit of gluttony oppressed Kimberly. Appellant instructed Ms. Jackson to make Kimberly run and to strike her with a switch if she resisted, as a means of breaking the demonic hold over Kimberly. In September 1989, appellant instructed Ms. Jackson to separate herself from Kimberly and allow appellant to care for Kimberly on a daily basis. A September diary entry records that Kimberly was denied food for several days and suggests that Kimberly may have been forced to drink urine and bath water. Appellant assumed full control of Kimberly's diet, and Kimberly's weight began to drop.
In early October 1987, appellant's daughter, Tina Brown, noticed that Kimberly was losing weight and notified the Department of Health and Rehabilitative Services (HRS). After visiting appellant, HRS took no further action. Kimberly continued to lose weight. In December 1987, Ms. Brown again notified HRS. HRS again visited appellant's home but did not take further action.
A laundromat worker testified that she had observed Kimberly during the summer and fall of 1987. During appellant's visits to the laundromat, Kimberly sat quietly and never ate snacks. She became thinner and weaker during this period, but when the worker told appellant that something was wrong with Kimberly, appellant replied that there was always something wrong with Kimberly. On one occasion, the laundromat worker offered Kimberly food; however, appellant would not allow her to eat and stated that the child had a stomach virus.
In January of 1988, Ms. Jackson questioned appellant about Kimberly's weight loss. Appellant told Ms. Jackson that her questions angered God and strengthened the evil spirits. On the Friday before Kimberly's death, appellant whipped Kimberly for being disobedient. Ms. Jackson protested the severity of the beating. Afterwards, appellant told Ms. Jackson to pray in appellant's bedroom. During this prayer session, Ms. Jackson heard a voice that sounded like appellant's tell her to chastise Kimberly. Ms. Jackson reported the voice to appellant. Appellant told Ms. Jackson that the Lord's word comes in familiar voices and that she should follow His word and chastise Kimberly. Ms. Jackson whipped Kimberly.
On the day before Kimberly's death, Ms. Jackson noticed that Kimberly was sluggish; however, appellant persuaded Ms. Jackson that Kimberly was only faking. Appellant and Ms. Jackson stayed with Kimberly throughout the evening. They prayed and anointed Kimberly. At approximately 7:30 a.m., Ms. Jackson determined that something was wrong with Kimberly and called an ambulance. Kimberly, however, had been dead for several hours.
At the time of death, four-year-old Kimberly McZinc had virtually no body fat, had wasted muscles, and a small liver. An autopsy revealed that the child had severe bruises on her back, legs, abdomen, and arms, and that her liver had been partially consumed by her body. The medical examiner testified that Kimberly had died in extreme pain.
Appellant was convicted of first-degree felony murder with the underlying felony being aggravated child abuse pursuant to Sections 827.03(1)(b) and (c), Florida Statutes.[1] Appellant argues that the terms *819 "malicious punishment" and "willful torture" have been held to connote acts of commission, not omission, and therefore the failure to feed a child is insufficient to support a conviction for aggravated child abuse. We have no difficulty in concluding "malicious punishment" or "willful torture" may consist of acts of commission or omission. Therefore, we affirm appellant's conviction.
We are aware of Jakubczak v. State, 425 So.2d 187 (Fla. 3d DCA 1983), and State v. Harris, 537 So.2d 1128 (Fla. 2d DCA 1989), wherein those courts concluded that the Legislature intended to punish only acts of commission in Section 827.03, Florida Statutes, and that failure to take a child for medical treatment was not an act of "commission." However, Florida's child abuse statute,[2] clearly defines "torture" as an act of omission. Therefore, we decline to follow the rationale of Jakubczak and Harris and hold that Section 827.03 contemplates acts of commission or omission.
We also hold that the willful, systematic deprivation of food over a period of four months, culminating in death from starvation, and the administration of severe beatings to the four-year-old child are each acts of commission.
Appellant contends that the evidence does not establish that she had the requisite intent to act as a principal in the willful torture or malicious punishment of the child. On the contrary, the evidence reveals that appellant was in complete control over Kimberly's diet, that she also exercised controlling influence over the mother, and that she directed the mother's punishment of Kimberly. When Kimberly was offered food from third persons, appellant prohibited her from eating. This process of willfully starving the child occurred over a period of at least four months. There was evidence that appellant severely beat Kimberly on at least one occasion and directed Ms. Jackson to chastise her on several others. Evidence proved that the starvation and beatings were unusually long and intensely painful. There was evidence that appellant's conduct was excessive, cruel, and merciless. The weight of the evidence on the issue of intent was a matter for the jury to resolve. Freeze v. State, 553 So.2d 750 (Fla. 2d DCA 1989).
Deprivation of food is specifically addressed in Section 827.04, Florida Statutes. However, the case sub judice involved an aggravated form of food deprivation carried out systematically with intent to willfully torture and maliciously punish the child. Under these aggravated circumstances, the State was entitled to prosecute under Section 827.03, Florida Statutes.
Appellant's second contention is without merit. The trial court gave the standard jury instructions on aggravated child abuse, as agreed by all parties at the charge conference. Appellant made no objection concerning the aggravated child abuse statute. The error was not fundamental, and the issue was not properly preserved for appeal. Murray v. State, 491 So.2d 1120 (Fla. 1986).
Accordingly, we affirm the judgment of conviction and sentence imposed thereon.[3]
ZEHMER and WOLF, JJ., concur.
NOTES
[1] Section 827.03, Florida Statutes:

(1) "Aggravated child abuse" is defined as one or more acts committed by a person who:
(a) Commits aggravated battery on a child;
(b) Willfully tortures a child;
(c) Maliciously punishes a child; or
(d) Willfully and unlawfully cages a child.
(2) A person who commits aggravated child abuse is guilty of a felony of the second degree punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
[2] Section 827.01, Florida Statutes:

(1) "Child" means any person under the age of 18 years.
(2) "Placement" means the giving or transferring of possession or custody of a child by any person to another person for adoption or with the intent or purpose of surrendering the control of the child.
(3) "Torture" means every act, omission, or neglect whereby unnecessary or unjustifiable pain or suffering is caused.
[3] Appellant was sentenced to life on the felony murder charge, and 30 months on the aggravated child abuse charge, the sentences to run concurrently.