600 So.2d 1101 (1992)
Mary NICHOLSON, Petitioner,
v.
STATE of Florida, Respondent.
No. 78045.
Supreme Court of Florida.
June 4, 1992.
Rehearing Denied July 28, 1992.
*1102 Nancy A. Daniels, Public Defender and Glen P. Gifford, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for petitioner.
Robert A. Butterworth, Atty. Gen., and Bradley R. Bischoff, Asst. Atty. Gen., Tallahassee, for respondent.
KOGAN, Justice.
We have for review Nicholson v. State, 579 So.2d 816 (Fla. 1st DCA 1991), because of conflict with Jakubczak v. State, 425 So.2d 187 (Fla. 3d DCA 1983), and State v. Harris, 537 So.2d 1128 (Fla. 2d DCA 1989). We have jurisdiction, article V, section 3(b)(3), Florida Constitution, and approve the decision below.
On February 8, 1988, four-year-old Kimberly McZinc died of starvation. Kimberly's mother, Darlene Jackson, pled nolo contendere to charges of third-degree murder and simple child abuse.
After Kimberly's birth, Darlene experienced a renewed interest in religion and became "born again." Darlene's view of life on earth began to center on the continuous struggle between the forces of God and Satan. Because of several unusual coincidences, Darlene began to think that her daughter was possessed by evil spirits and she began to dwell on concepts such as Satan and oppression by demons. Darlene, who lived in New York City, began communicating by phone with the petitioner, Mary Nicholson. Nicholson interpreted dreams and gave prophecies to Darlene over the phone.
In July 1987, Darlene took Kimberly to Nicholson's home in Pace, Florida. Darlene kept a diary that chronicled her participation in religious activities with Nicholson. The diary reflected that Nicholson provided specific directions to Darlene in disciplining Kimberly that were based on Nicholson's "prophecies from God." According to the prophecies, Kimberly was oppressed by the evil spirit of gluttony. The prophecies contained directions about Kimberly's feeding and exercise habits. According to Darlene's account, she was commanded to make Kimberly run, and to strike her with a switch if she resisted.
Nicholson instructed Darlene that she must separate herself from Kimberly and allow her to care for Kimberly on a daily basis. Nicholson assumed full control of Kimberly's diet, and Kimberly's weight began to drop. A September diary entry records that Kimberly was denied food for several days and suggests that Kimberly was forced to drink urine and bath water.
A Laundromat worker testified that she had observed Kimberly during the summer and fall of 1987. During Nicholson's visits to the Laundromat, Kimberly sat quietly and never played or ate snacks with Nicholson's children. Kimberly became thinner and weaker during this period, but when the worker told Nicholson that something was wrong with Kimberly, she replied that there was always something wrong with Kimberly. On one occasion, the Laundromat worker offered Kimberly food; however, Nicholson would not allow her to eat stating that the child had a stomach virus.
In January 1988, Darlene asked Nicholson about Kimberly's weight loss. Nicholson told Darlene that her questions angered God and strengthened the evil spirits. On the Friday before Kimberly's death, Nicholson whipped Kimberly for being disobedient. Darlene protested the severity of the beating but, nonetheless, Darlene listened to Nicholson's instruction and later beat Kimberly herself.
On the day before Kimberly's death, Darlene noticed that Kimberly was sluggish; however, Nicholson insisted that Kimberly was only faking. Petitioner and Darlene stayed with Kimberly throughout the evening. They prayed at Kimberly's bedside and anointed her. At approximately 7:30 a.m., Darlene determined that something *1103 was wrong with Kimberly and called an ambulance. Kimberly, however, had been dead for several hours.
At the time of death, four-year-old Kimberly McZinc had virtually no body fat, had wasted muscles, and a small liver. An autopsy revealed that the child had severe bruises on her back, legs, abdomen, and arms, and that her liver had been partially consumed by her body. The medical examiner testified that Kimberly had died in extreme pain.
Nicholson was charged with and convicted of first-degree felony murder and aggravated child abuse under section 827.03, Florida Statutes (1987).
At trial, Nicholson sought a judgment of acquittal, claiming that the evidence failed to establish that Kimberly died as a result of willful torture or malicious punishment as charged in the indictment. The motion was denied. On appeal, Nicholson challenged the trial court's refusal to enter a judgment of acquittal and further maintained that the trial court committed fundamental error by instructing the jury that aggravated child abuse by willful torture under section 827.03(1)(b) includes acts of omission or neglect.
Both of Nicholson's claims are based on the contention that only acts of commission done with specific intent are actionable under section 827.03.[1]See Jakubczak v. State, 425 So.2d at 189 ("legislature intended to punish under section 827.03 only acts of commission done with specific intent"); State v. Harris, 537 So.2d at 1129 (same). Nicholson therefore argues that omission by failing to feed a child is insufficient to support a conviction of aggravated child abuse.
The First District Court of Appeal rejected this contention, stating that it had no difficulty in concluding that "willful torture" may consist of acts of commission or omission. 579 So.2d at 819. The district court acknowledged Jakubczak and Harris in which the Third and Second District Courts of Appeal held that the legislature intended to punish only acts of commission done with specific intent under section 827.03, and that the failure to take a child for medical treatment was not an act of "commission." Id. However, it rejected that interpretation of the statute, instead, holding that section 827.03 "contemplates acts of commission or omission." Id. We agree with this construction.
As recognized by the court below, "Florida's child abuse statute, clearly defines `torture' [to include] an act of omission." Id. (footnote omitted).[2] When a definition of a word or phrase is provided in a statute, that meaning must be ascribed to the word or phrase whenever it is repeated in the statute unless a contrary intent clearly appears. Vocelle v. Knight Bros. Paper Co., 118 So.2d 664, 667 (Fla. 1st DCA 1960). There is no contrary intent apparent in chapter 827. The word "torture" is used only once in chapter 827, that being in section 827.03(1)(b). Therefore, if the definition contained in section 827.01(3), Florida Statutes (1987), is to be given effect, it must be read into the phrase "willful torture" as used in section 827.03(1)(b). See Villery v. Florida Parole & Probation Comm'n, 396 So.2d 1107, 1111 (Fla. 1980) (where possible, court must give full effect to all statutory provisions and construe related provisions in harmony with one another). Applying the definition of torture supplied by the legislature results in a reading of section 827.03(1)(b) that includes not only willful acts of commission, but also willful acts of omission and neglect that cause unnecessary or unjustifiable pain or suffering to a child. We find no ambiguity in this construction. One can willfully omit *1104 or neglect to do something that results in unnecessary or unjustifiable pain and suffering just as one can willfully commit an act that produces the same result.
Thus, a willful "omission, or neglect whereby unnecessary or unjustifiable pain or suffering is caused"[3] constitutes aggravated child abuse under section 827.03(1). The fact that section 827.03(1) expressly refers to "one or more acts committed" in defining aggravated child abuse does not preclude this construction because it is clear that in the criminal context an omission or failure to act may constitute an act. Black's Law Dictionary 25 (6th ed. 1990).
It is true that section 827.04, Florida Statutes (1987), specifically addresses the deprivation of food.[4] However, we agree with the district court that
the case sub judice involved an aggravated form of food deprivation carried out systematically [accompanied with a regimen of forced exercise and beatings] with intent to willfully torture and maliciously punish the child. Under these aggravated circumstances, the State was entitled to prosecute under Section 827.03, Florida Statutes.
579 So.2d at 819.
We disapprove the decisions in Jakubczak and Harris to the extent they are in conflict with this opinion. However, we note that those cases are factually distinguishable. Both Jakubczak and Harris involved the negligent failure to seek prompt and timely medical attention for an injured child. We agree that such negligent omissions are not encompassed by section 827.03 not because they are omissions, but because they are committed without the requisite specific intent. Accordingly, the Jakubczak and Harris decisions are disapproved insofar as they hold that only acts of commission constitute aggravated child abuse under section 827.03.
In this case, Nicholson was in complete control of Kimberly's diet and, on several occasions, she emphatically denied the child food offered by third persons. The regime resulting in Kimberly's death clearly was systematic, continuing over a four-month period during which time the child's deterioration was brought to Nicholson's attention. These facts alone support a finding of willful intent.
Accordingly, we approve the decision below.
It is so ordered.
OVERTON, McDONALD, BARKETT, GRIMES and HARDING, JJ., concur.
SHAW, C.J., concurs in result only.
NOTES
[1] Section 827.03, Florida Statutes (1987), provides in pertinent part:

(1) "Aggravated child abuse" is defined as one or more acts committed by a person who:
(a) Commits aggravated battery on a child;
(b) Willfully tortures a child;
(c) Maliciously punishes a child; or
(d) Willfully and unlawfully cages a child.
(2) A person who commits aggravated child abuse is guilty of a felony of the second degree... .
[2] Section 827.01(3), Florida Statutes (1987), defines the term "torture," as used in chapter 827, to mean "every act, omission, or neglect whereby unnecessary or unjustifiable pain or suffering is caused."
[3] § 827.01(3).
[4] Section 827.04 provides in pertinent part:

(1) Whoever, willfully or by culpable negligence, deprives a child of, or allows a child to be deprived of, necessary food, clothing, shelter, or medical treatment, or who, knowingly or by culpable negligence, permits physical or mental injury to the child, and in so doing causes great bodily harm, permanent disability, or permanent disfigurement to such child, shall be guilty of a felony of the third degree... .
(2) Whoever, willfully or by culpable negligence, deprives a child of, or allows a child to be deprived of, necessary food, clothing, shelter, or medical treatment, or who, knowingly or by culpable negligence, permits physical or mental injury to the child, shall be guilty of a misdemeanor of the first degree... .