RYDER, Judge.
The State of Florida challenges the trial court’s order dismissing charges of first degree felony murder by aggravated child abuse and aggravated child abuse against Mary Carwile and Jack Gray. We reverse.
The victim, Amy Boney, who was two years old at the time of her death, was in the care of appellees at all times from the time she sustained injury until her death. The detective’s reports indicate Carwile stated that something happened while Danny, her thirteen-year-old son, and Amy were alone in the children’s bedroom. *749 When Amy came out of the bedroom, she was walking wobbly. She kept her head and chin down; her eyes stayed glassy from the time of the incident until the day she became unconscious. Carwile told the detective that Amy’s speech was slurred and that right after Amy came out of the bedroom when she was laid down on the floor to change her diaper, she started screaming a loud, “not normal” scream. Gray even asked what was wrong with the baby. When Amy tried to run she would stumble and fall.
Carwile’s twelve-year-old daughter, Natasha, also gave a statement to the detectives. Even Natasha noticed that there was a change in Amy after the incident. Natasha said that after Sunday night when Amy was hurt she would fall, trip and stumble around. By Tuesday, she would not even get up any more. Natasha also stated that on the Sunday, when Danny and Amy had been alone in the bedroom, Amy had tears in her eyes and a half smile. The following day, according to Natasha, there was a change in Amy and she even “looked different.” Later, Amy wanted a bottle and acted as if she did not feel well. On Tuesday, Amy never got out of bed, and she kept her chin down a lot of the time after Sunday night’s incident. Natasha further related that Amy cried more than usual and would scream “real loud” as though she was in pain. Natasha told a detective that, on Wednesday, Amy stayed in bed or on the couch until she was found on the living room floor. Some time on Tuesday, Amy’s eyes started closing about halfway and that this condition continued until she was taken to the hospital on Wednesday.
The state charged Carwile and Gray under sections 782.04 and 827.03, Florida Statutes (1991), with first degree murder, a capital felony, and aggravated child abuse for the alleged willful torturing of a person under the age of eighteen years by willfully omitting or neglecting to assist or seek medical treatment for Amy Boney.
Carwile filed a sworn motion to dismiss stating that the state could prove that the child resided with Carwile, that Carwile did not seek medical care for the child until an emergency situation arose, and that the child died on August 24, 1991 from a head injury. Her motion included a portion of Detective Schaill’s report which included Natasha’s statement that her mother told her that if an emergency arose to call her first before calling “911.” Also, her motion stated that there was no evidence that she was ever aware of any specified head injury, especially that alleged to have been inflicted by her son, Danny, by pushing Amy so that the child’s head struck a dresser. She' further stated that the evidence does not support a finding that she had the specific intent to torture Amy. Her motion urged that the state’s evidence did not support a finding that she had the specific intent to torture Amy Boney; rather, the state’s evidence, at most, supported a finding of negligent failure to obtain medical care which by statutory definition constitutes child abuse, not aggravated child abuse. The state did not file a traverse.
Gray also filed a sworn motion to dismiss which the state likewise did not traverse. He argued that the undisputed facts revealed that he did not commit any act of abuse on the child and that he lacked the specific intent to commit abuse. Gray asserted at the hearing that at the time of Amy’s death, she was not in his care. Gray and his two children were only residents in the home of Mary Carwile. He argued that the state’s position that Car-wile’s desire to shield her son Danny was evidence of intent was not applicable to him because he was merely a resident of the house and not Danny’s father.
At the hearing on appellees’ motions to dismiss, the state advised the trial judge that based on State v. Harris, 537 So.2d 1128 (Fla. 2d DCA1989), the defense motions were well taken and should be granted, with the proviso that the state would be seeking an appeal. The court entered its order dismissing the subject charges of the indictment. This appeal followed.
The prosecutor led the trial judge into error. Had a traverse been filed by the state, an automatic denial of the motion *750 would have been required. Fla.R.Crim.P. 3.190(d); State v. J.T.S., 373 So.2d 418, 419 (Fla. 2d DCA1979). But even in the absence of a traverse to appellees’ motions to dismiss, it is error for the trial court to grant the motion. The sole basis of appel-lees’ motions was that they lacked the intent to commit aggravated child abuse. “Intent is not an issue to be decided on a motion to dismiss under rule 3.190(c)(4), Florida Rules of Criminal Procedure, since intent is usually inferred from the acts of the parties and the surrounding circumstances; being a state of mind, intent is a question of fact to be determined by the trier of fact, who has the opportunity to observe all of the witnesses.” J.T.S. at 419, citing State v. West, 262 So.2d 457 (Fla. 4th DCA1972). See State v. Feagle, 600 So.2d 1236 (Fla. 1st DCA1992); State v. Booker, 529 So.2d 1239 (Fla. 1st DCA1988); State v. Milton, 488 So.2d 878 (Fla. 1st DCA), cert. denied, 479 U.S. 1012, 107 S.Ct. 659, 93 L.Ed.2d 713 (1986); State v. Stenza, 453 So.2d 169 (Fla. 2d DCA1984); State v. Hricik, 445 So.2d 1119 (Fla. 2d DCA1984).
Although appellees’ motions to dismiss focus on the issue of intent, in the Carwile case in particular, the asserted facts in the sworn motion conflict on their face as to intent. Natasha’s statement that her mother told her to first call her rather than “911” would appear to contradict the other statements that Carwile did not intend to torture the child or fail to obtain medical attention for the child.
Neither the state’s attorney, the public defender nor the court had the benefit of Nicholson v. State, 600 So.2d 1101 (Fla.), cert. denied, — U.S.-, 113 S.Ct. 625, 121 L.Ed.2d 557 (1992), at the time the trial court considered the pleadings. Nicholson reversed State v. Harris, 537 So.2d 1128 (Fla. 2d DCA1989) and Jakubczak v. State, 425 So.2d 187 (Fla. 3d DCA1983) and held that willful acts of omission and neglect that cause unnecessary or unjustifiable pain or suffering to a child are included in the definition of torture under section 827.03(1)(b). Negligent omissions are not encompassed by section 827.03 not because they are omissions, but because they are committed without the requisite specific intent. Nicholson at 1104. Under Nicholson, if the state proves that Carwile’s and Gray’s actions or inac-tions were willful omissions, the provisions of section 827.03 apply.
We conclude that error occurred in granting appellees’ motions to dismiss, and, therefore, reverse and remand for further proceedings.
Reversed and remanded.
LEHAN, C.J., and FRANK, J., concur.