PER CURIAM.
 

 Dean Cox challenges his aggravated child abuse conviction for which he was sentenced to thirty years’ imprisonment.
 
 [1]
 
 The charged events occurred on July 16, 2004, and involved Cox’s eight-year-old son, B.C., and six-year-old son, C.C. Because Cox’s conduct does not constitute the crime of aggravated child abuse, his conviction is fundamentally erroneous and must be reversed.
 

 On the evening of July 16, 2004, during a two-week visitation with Cox, B.C. and C.C. made a phone call to their mother, Bonnie Patterson. Mrs. Patterson, who had a domestic violence injunction against Cox, refused to speak with him. Shortly thereafter Cox launched into a frightening tirade against Mrs. Patterson and her new husband, Patrick. Mrs. Patterson received several more calls and voice messages from Cox and her sons in which she could hear Cox’s angry ranting and the boys’ screaming.
 

 At some point during this tirade, Cox rubbed the blunt edge of a pocket knife on B.C.’s leg, then stabbed a mattress several times stating, “[T]his is what I’ll do to Patrick and your mom.” B.C. testified that this frightened him, though he did not scream or cry. His brother, C.C., suffered from mental and physical health issues and was screeching loudly during the incident, as he often did when agitated. Neither of the boys sustained any physical injury, nor did the State present evidence of resulting mental injury.
 

 
 *1222
 
 Cox was charged with aggravated child abuse in violation of section 827.03(2)(b), Florida Statutes (2004), which provides that aggravated child abuse occurs when a person “[w]illfully tortures, maliciously punishes, or willfully and unlawfully cages a child.” Section 827.03(4) defines maliciously as
 

 wrongfully, intentionally, and without legal justification or excuse. Maliciousness may be established by circumstances from which one could conclude that a reasonable parent would not have engaged in the damaging acts toward the child for any valid reason and that the primary purpose of the acts was to cause the victim unjustified pain or injury.
 

 The information charged Cox under both the malicious punishment and willful torture theories, but at trial the State focused on a theory of torture. The defense contended that there was no knife and that Mrs. Patterson fabricated the story. In its motion for judgment of acquittal the defense presented the following argument as to the aggravated child abuse charge:
 

 I guess they testified that there was a knife so we can’t dispute that now, punish or torture, kid was crying so we’re not disputing that.
 

 The issue is that [Cox] was going to kill their step-father or their mother in demonstrating how he was going to kill them. That’s never been alleged to this point in the trial.
 

 ... [T]here was nothing said or done by Mr. Cox as to this is how or what I’m going to do to your parents.
 

 The motion was denied and Cox was convicted of aggravated child abuse. Cox argues on appeal that the State presented no evidence of malicious punishment or willful torture. For the reasons explained below, we agree.
 

 We first address the “malicious punishment” theory. The State presented no evidence that Cox’s actions were imposed as a form of punishment against B.C. or C.C. Rather, it appears the children were drawn into Cox’s angry outburst aizned at Bonnie and Patrick Patterson. The evidence shows Cox’s actions were not a form of punishment and thus malicious punishment cannot serve as a basis for conviction.
 
 See
 
 § 827.03.
 

 We now consider whether the State presented evidence to support a conviction based on a “willful torture” theory. Though the scant argument presented on the motion for judgment of acquittal is not sufficient to properly presezrve this issue for appeal, lack of presezrvation does
 
 not
 
 prevent us from reviewing fundamental error. El
 
 lis v. State,
 
 714 So.2d 1160, 1161 (Fla. 2d DCA 1998). “A conviction is fundamentally erroneous when the facts affirmatively pi’oven by the State simply do not constitute the charged offense as a matter of law.”
 
 Griffin v. State,
 
 705 So.2d 572, 574 (Fla. 4th DCA 1998);
 
 see also F.B. v. State,
 
 852 So.2d 226 (Fla.2003).
 

 Section 827.03(2) does not define torture, so we look to ease law and the greater statutory scheme for guidance as to what constitutes torture for purposes of aggravated child abuse. Florida’s child abuse statutes generally seek to “define the boundary between permissible parental discipline and prohibited child abuse.”
 
 State v. McDonald,
 
 785 So.2d 640, 642 (Fla. 2d DCA 2001). Aggravated child abuse is largely determined on a case-by-case basis rather than with bright-line rules as to what conduct does and does not constitute aggravated child abuse.
 
 Herbert v. State,
 
 526 So.2d 709, 712 (Fla. 4th DCA 1988). This flexibility is critical to allow for consideration of such factors as the age of the victim, the frequency of prohibited conduct, and other circum
 
 *1223
 
 stances relevant to a particular case. It is clear, however, that “the first-degree felony of aggravated child abuse [is] preserved for truly aggravated circumstances.”
 
 McDonald,
 
 785 So.2d at 642;
 
 see also Herbert,
 
 526 So.2d at 712 n. 3 (“[P]ortions of section 827.08 prohibit the ‘willful torturing’ and ‘willful and unlawful caging’ of children. This would seem to indicate that the legislature intended to proscribe conduct far more brutal than the spanking of a child by a parent.”).
 

 Previous versions of section 827.01, Florida Statutes, defined torture for purposes of aggravated child abuse as “every act, omission, or neglect whereby unnecessary or unjustifiable pain or suffering is caused.”
 
 See Nicholson v. State,
 
 600 So.2d 1101 (Fla.1992) (discussing what acts constitute torture under previous version of sections 827.01 and 827.03). However, this definition was deleted when chapter 827 was extensively amended in 1996.
 

 Cox suggests that we look to the more stringent definition of torture provided in
 
 Black’s Law Dictionary
 
 as follows: “To inflict intense pain to body or mind for purposes of punishment, or to extract a confession or information, or for sadistic pleasure.”
 
 [2]
 

 Black’s Law Dictionary
 
 1490 (6th ed. 1990). While we agree that such conduct would certainly constitute “willful torture” pursuant to section 827.03, we decline to apply this common definition of torture as the baseline for conduct constituting torture of a child pursuant to section 827.03(2)(b). Instead, we look to case law on aggravated child abuse in general for guidance as to what conduct falls within the ambit of aggravated child abuse by willful torture.
 

 In Nicholson v. State,
 
 579 So.2d 816 (Fla. 1st DCA 1991),
 
 approved,
 
 600 So.2d 1101 (Fla.1992), a mother and her acquaintance, Mary Nicholson, imposed on her four-year-old daughter a regimen of forced exercise, severe beatings, and food deprivation in an effort to free the daughter of what they believed to be evil spirits. This was carried out over four months until the child died of starvation.
 
 Id.
 
 The supreme court concluded these acts and omissions were sufficient to constitute aggravated child abuse both as malicious punishment and willful torture as previously defined in section 827.01.
 
 Id.
 

 In
 
 Snyder v. State,
 
 564 So.2d 193 (Fla. 5th DCA 1990), evidence was sufficient to survive a motion for judgment of acquittal for aggravated child abuse where a fourteen-year-old boy was subjected on numerous occasions to videotaped beatings with a paddle and baseball bat. The child suffered severe bruising as a result of the repeated abuse and “was an object to satisfy the sadistic impulses of the appellants.”
 
 Id.
 
 at 196.
 

 While these cases demonstrate the type of conduct that constitutes aggravated child abuse by willful torture, there is a dearth of cases describing conduct that does not rise to the level of this crime. However, this court has held that aggravated child abuse for malicious punishment is reserved for “cases involving parental discipline that results in great bodily harm or permanent disabilities and disfigurements or that demonstrates actual malice on the part of the parent and not merely a momentary anger or frustration.”
 
 McDonald,
 
 785 So.2d at 646. In
 
 Moakley v. State,
 
 a father was convicted of aggravated
 
 *1224
 
 child abuse after a single incident of spanking his daughter on the buttocks with a leather belt leaving bruises. 547 So.2d 1246 (Fla. 5th DCA 1989). The conviction was reversed for lack of malice and “a lack of evidence ... to establish that the actions of appellant were cruel or merciless or so excessive as to warrant a criminal conviction.”
 
 Id.
 
 at 1247.
 

 In this case, Cox’s tirade about his ex-wife and her husband undoubtedly inflicted a substantial amount of fear and anxiety in the young boys. However, no physical injury was inflicted on the children, nor is there proof of any mental injury resulting from the episode. While the conduct to which the children were exposed is unacceptable from any rational parenting perspective, this conduct simply does not involve the level of brutality or extreme pain and suffering necessary to constitute aggravated child abuse by willful torture.
 

 We conclude that the facts proven by the State simply do not constitute the charged offense of aggravated child abuse. Therefore, the conviction for aggravated child abuse is fundamentally erroneous, and we must reverse. Reversed.
 

 NORTHCUTT, C.J., and STRINGER and WALLACE, JJ., Concur.
 

 [1]
 

 . Cox was also convicted of stalking and violating an injunction but does not challenge those convictions in this appeal.
 

 [2]
 

 . This definition was considered in
 
 State v. Harris,
 
 537 So.2d 1128, 1130 (Fla. 2d DCA 1989), which held that acts of omission and neglect were not included in the meaning of "willful torture” under section 827.03.
 
 Nicholson v. State,
 
 600 So.2d 1101 (Fla.1992), disapproved
 
 Harris
 
 in part, holding that willful acts of omission and neglect can constitute torture under section 827.03.