752 So.2d 4 (2000)
Kimberly CONINE, Appellant,
v.
STATE of Florida, Appellee.
No. 1D97-4843.
District Court of Appeal of Florida, First District.
January 5, 2000.
Rehearing Denied February 25, 2000.
*5 Nancy A. Daniels, Public Defender; Chet Kaufman, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Giselle Lylen Rivera, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
Appellant challenges judgments and sentences for third degree murder, aggravated child abuse, and felony child abuse. With regard to the murder conviction, she argues the trial court erred in denying her motion for judgment of acquittal because the evidence established conclusively that death was caused by the infliction of a traumatic injury by the father, in her absence, without her knowledge or participation, and the evidence failed to eliminate her reasonable hypothesis of innocence. Appellant and the children's father, who was convicted of first degree murder based on aggravated child abuse, were tried jointly. While the evidence supports appellant's convictions for aggravated child abuse and felony child abuse, we conclude that the record does not support the third degree murder conviction. Therefore we reverse that judgment and sentence. We affirm in all other respects.
Appellant's twin daughters were born prematurely on March 12, 1996. The children were permitted to leave the hospital and go home with their parents on April 26, 1996. Appellant returned to work about three weeks before one of the twins, Tresca, died, on July 18, 1996. There is evidence in the record that both girls had sustained bone fractures of the legs, arms, and ribs, which do not ordinarily occur in infants unless there has been child abuse. There is evidence that the cause of Tresca's death was a blow to the head.
Before leaving for work at about 2:00 PM on July 18, 1996, appellant settled the babies, then four months old, on the bed in the parents' room, arranging pillows and a comforter around them so they would not fall off the bed. She instructed the father when to feed the children and left approximately two hours before paramedics were called. At a few minutes before 4:00 PM, the babies' father called appellant and 911 to report that Tresca was choking on her formula. Emergency medical team members testified that when they arrived, the baby was completely blue. The father told paramedics he had been feeding the baby and she must have choked because she had stopped breathing. He later changed his story and said the baby apparently had fallen off the bed, because when he went into the bedroom, he found her on the floor, and she was not breathing. There is evidence in the record that a fall from the bed, which would be twenty-nine inches, would not have caused death.
The day after Tresca's death, the surviving twin was placed in foster care. Ultimately, after multiple healing bone fractures were discovered on the surviving twin, Tresca's body was exhumed and similar healing fractures of various ages, from approximately three weeks to two weeks to two days before her death, were discovered.
There was testimony that, on one occasion, appellant kicked the car seat in which Tresca was seated, moving it about sixteen inches across the floor, although apparently no injury resulted. There was evidence that, on another occasion, appellant left the crying children in a vehicle for several hours, and that on still another occasion, she had been heard calling the children "bitches" and "retards." She was once observed picking up one of the infants by an arm, and when questioned about it, said it was not unusual. In addition, while watching the father carry one of the babies without supporting its head, she was overheard saying she wished he would not do *6 that, but she did not take action to stop him.
Appellant admitted that before leaving for work on July 18, 1996, she had shaken one of the children and cursed at it, although the record does not reveal which child was involved. There was also evidence she had taken the children to the doctor on numerous occasions, that she thought they had colic and that is why they cried so often, and that at one point, she said she knew she should not have gone to work the day of Tresca's death.
At trial, the state conceded, as appellant states on appeal, that the third degree murder charge was based not on appellant's direct commission of the fatal injury; rather, the state's theory was that appellant permitted ongoing abuse to occur, and allowed the creation of an environment in which the fatal injury could occur. Appellant contends there was insufficient proof that she participated as a principal in the fatal act of abuse, and that the state failed to negate her reasonable hypothesis of innocence, which was her alleged belief that the children suffered from colic and cried often for that reason.
The state contends the record contains competent substantial evidence to support the denial of the motion for judgment of acquittal of third degree murder, and that it proved death resulted from aggravated child abuse, that appellant was observed engaging in egregiously abusive conduct toward the children, and that she knew the father handled the children inappropriately. The state contends conviction as an aider or abettor can be based on willful omission, citing Nicholson v. State, 600 So.2d 1101 (Fla.1992)(appellant committed aggravated child abuse by systematically starving child to death). We find the present case distinguishable from Nicholson.
We are persuaded by appellant's argument that the state failed to present evidence that anything she did was the legal cause of Tresca's death, or that she was guilty as a principal, as there was no evidence of a common plan or scheme. See Hall v. State, 403 So.2d 1319 (Fla.1981). The rulings in Zile v. State, 710 So.2d 729 (Fla. 4th DCA 1998), which both parties rely on, support our decision in this case. In Zile, while the court ruled that the jury could convict appellant of aggravated child abuse when she was present and "failed to execute her duty to protect the victim by standing by and allowing [her husband] to punish the victim so severely," the court reversed her conviction of a separate incident of aggravated child abuse, because "there [was] no evidence that [a]ppellant participated or was in a position to stop it." She was not present in the room at the time of the latter incident of abuse, and there was no indication she was aware of what was occurring.
Although the evidence in this case indicates appellant is far from a model parent, one would have to engage in extensive pyramiding of inferences, given this record, to conclude that she is legally responsible for the child's death.
Accordingly, we AFFIRM appellant's convictions for aggravated child abuse and felony child abuse, but REVERSE the conviction for third degree murder and REMAND with instructions to vacate the judgment and sentence for third degree murder.
JOANOS, LAWRENCE and VAN NORTWICK, JJ., CONCUR.