882 So.2d 456 (2004)
John LEINHART and Bradley University, Appellants,
v.
Jayme JURKOVICH, Appellee.
No. 4D03-1572.
District Court of Appeal of Florida, Fourth District.
September 1, 2004.
Rehearing Denied October 11, 2004.
*457 Michael A. Mullen, Joel V. Lumer and David A. Neblett of Gaebe, Mullen, Antonelli, Esco & DiMatteo, Coral Gables, for appellants.
Kelly B. Gelb of Krupnick, Campbell, Malone, Buser, Slama, Hancock, McNelis, Liberman & McKee, P.A., Fort Lauderdale, for appellee.
WARNER, J.
Plaintiff, Jayme Jurkovich, a college student at Bradley University in Illinois, sued the University and the driver of its van, for injuries sustained in an automobile accident that occurred while plaintiff was in Fort Lauderdale with the University swim team. She recovered a substantial judgment, and the University appeals. We address two claims. First, the University contends that the court erred in refusing to give a permanency instruction pursuant to Florida's no-fault law. As to this issue, we hold that the court correctly denied the request because, under choice of laws principles, the law of Illinois, which does not have a permanency threshold to recover non-economic damages, would apply. The University also complains that the trial court abused its discretion in refusing to allow an independent medical examination of plaintiff. Under the circumstances presented in this case, we conclude that the trial court did not abuse its discretion. We therefore affirm.

I. Choice of Law
Plaintiff alleged she was injured in a motor vehicle accident while riding as a passenger in a van owned by Bradley University. Plaintiff was on the University swim team, which had traveled from Illinois to Florida. The van was hit by two cars. The University was insured through a policy issued in Illinois. Plaintiff sued the University and its driver in Broward County Circuit Court for her injuries. As an affirmative defense, the University alleged that plaintiff's injuries were subject to the Florida no-fault law. At trial, it requested that the court instruct the jury on the permanency of plaintiff's injuries in compliance with the no-fault law. The trial court rejected the instruction, finding that Illinois law, not Florida law, applied. Under Illinois law and the Illinois policy, permanency was not a threshold issue for the recovery of non-economic damages.
The University challenges this finding, citing to Hoffman v. Ouellette, 798 So.2d 42 (Fla. 4th DCA 2001), as standing for the proposition that where non-residents sue each other over an automobile accident occurring in Florida, Florida law applies. However, Hoffman analyzed the choice of law as it applied to the facts of that case, where both parties involved were winter residents of Florida and neighbors, and the accident appears to have happened at their place of residence. The facts of this case are different.
Florida has adopted the significant relationships test for determining the choice of law applicable in personal injury claims. Bishop v. Fla. Specialty Paint Co., 389 So.2d 999, 1001 (Fla.1980). That *458 test requires the court to analyze various factors in determining which forum has the most significant relationship with the parties. Those factors are set forth in Restatement (Second) of Conflict of Laws § 145 (1971), which provides:
(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.
The next section specifies,
In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.
Restatement (Second) of Conflict of Laws § 146 (1971). The principles stated in § 6 of the Restatement include:
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.
Restatement (Second) of Conflict of Laws § 6(2) (1971). In this case, both parties reside in Illinois where their relationship is centered. Plaintiff is a college student at defendant University and was in the University van when injured. While the accident occurred in Florida, that was only fortuitous. An accident could have occurred in any state between here and Illinois. Thus, Illinois has the most significant relationship to the occurrence and the parties.
None of the other principles in the Restatement require the application of Florida law. While Florida law provides for no-fault protection to injured persons, personal injury protection coverage is not required of out-of-state motor vehicles. See § 627.733(2), Fla. Stat. (1994). Therefore, Florida has no policy interest in imposing the tort exemptions permitted when an out-of-state motor vehicle policy does not provide such coverage. The University has not argued that any of the other principles or factors compel the choice of Florida law. The trial court correctly determined that Florida law did not apply and the University was not entitled to the permanency jury instruction.

*459 II. Independent Medical Examination
In preparation for the original trial set for May 22, 2000, plaintiff traveled to Fort Lauderdale for a deposition. While there, she experienced a flare-up of back pain, and she saw Dr. Martin Silverstein. In her unilateral pretrial statement, she listed Dr. Silverstein as a witness. His opinions were not disclosed, and at the deposition plaintiff testified that she had never seen Dr. Silverstein.
Mediation was held on May 9, 2000. At the mediation, plaintiff produced an April 13, 2000, letter from Dr. Silverstein to her counsel for the first time. In the letter, Dr. Silverstein indicated that he had performed an orthopedic consultation and gave a second evaluation of plaintiff. The letter contained all of the records reviewed, examinations performed, opinions rendered, and recommendations for further treatment.
After receiving Dr. Silverstein's report, the University requested plaintiff appear at an independent medical examination and filed a motion to compel. Plaintiff objected to the examination as untimely because the trial was less than two weeks away. The court held a hearing and denied the motion to compel the examination. The court also struck Dr. Silverstein as a witness.
In the following two years, the case was reset for trial on eight different trial dockets. During that time the University made at least two requests for an independent medical examination of plaintiff. However, these requests were made within days of the dates the trial was scheduled to begin and were denied as untimely.
After the case was set for trial in November 2002, plaintiff filed a motion requesting that Dr. Silverstein be allowed to testify at trial. The court entered an order granting the motion and vacating that part of the May 2000 order that had prevented plaintiff from calling the doctor. Approximately one month prior to trial, the University again noticed plaintiff for an independent medical examination, and she filed a motion for protective order. The court entered an ex parte order granting her motion. The University requested a hearing, which the court denied. The University was able to take Dr. Silverstein's deposition on October 30, 2002, and the trial commenced November 12, 2002.
At trial, plaintiff presented the testimony of Dr. Francis Lagatutta, her treating orthopedic physician in Illinois, who testified as to her treatment and opined that plaintiff had suffered a disc herniation of the lower back as a result of the accident. He also testified as to plaintiff's need for future treatment and the permanency of her condition. Dr. Silverstein testified as to his examination of plaintiff in 2000. From his examination and review of her medical reports, he determined that plaintiff had a herniated disc in the lumbar portion of the back that was caused by the accident. He also observed atrophy of plaintiff's lower extremities, which he opined would result in weakness, something not diagnosed by other physicians. Dr. Silverstein determined that plaintiff's injury is permanent, will require future treatment, and will cause plaintiff pain for the remainder of her life.
Prior to the accident, plaintiff had received treatment for lower back pain. Plaintiff's medical records, admitted at trial, suggested that she had prior back problems at one time, causing her pain for several weeks. One line of the University's defense was that plaintiff's present complaints were the result of a pre-existing condition, not the accident.
The University presented the testimony of Dr. Robert Kagan, who had reviewed the x-rays and MRI films of plaintiff but *460 had never physically examined her. Plaintiff emphasized this lack of a physical examination by Dr. Kagan during cross-examination. Based on the x-ray and MRI films, Dr. Kagan agreed that plaintiff had a herniated disc, but he determined that the accident was not the cause of her disc problem.
The jury returned a verdict in favor of plaintiff for both past and future medical expenses, future lost earning ability, and past and future pain and suffering. The total amount of the judgment was $348,000.
The University maintains that the court abused its discretion in refusing to allow an independent medical examination of plaintiff once it permitted her to use Dr. Silverstein as a second expert examining witness. The issue of whether to permit a defendant's requested examination under Florida Rule of Civil Procedure 1.360 is a matter of discretion. State Farm Mut. Auto. Ins. Co. v. Shepard, 644 So.2d 111, 111 (Fla. 2d DCA 1994). We cannot say that the trial court abused its discretion in refusing to permit these late noticed requests for physical examination.
Florida Rule of Civil Procedure 1.360(a)(1) provides that "[a] party may request any other party to submit to ... examination by a qualified expert when the condition that is the subject of the requested examination is in controversy." When a plaintiff in a negligence action asserts that she has sustained a mental or physical injury, she places her condition in controversy, and good cause for the examination is shown. See Broward County Sch. Bd. v. Cruz, 761 So.2d 388, 393 (Fla. 4th DCA 2000), abrogated on other grounds by Grenitz v. Tomlian, 858 So.2d 999 (Fla.2003). The issues for determination at trial were whether plaintiff's injuries were caused by the accident or were pre-existing, and what was her future prognosis. By placing her physical condition in controversy, good cause was shown for an examination.
When a notice of examination is served without leave of court, the opposing party shall respond within thirty days of the request. Fla. R. Civ. P. 1.360(a)(1)(A). The court may require a shorter time for response. Id. Here, the University filed notice on October 7, 2002, for a physical examination scheduled October 17, 2002. Leave of court to shorten the response time period was not obtained. Plaintiff filed a motion for protective order on the ground that the scheduled examination was untimely and would entail her making an additional trip to Florida when trial was already set for November 12, 2002. She noted that the case had been pending for four years, and had the University needed a physical examination, one could have been secured much earlier. The court apparently agreed and granted her motion.
The University complains that an abuse of discretion occurred in allowing Dr. Silverstein to testify without also allowing it to have testimony from an expert who had conducted an independent medical examination of plaintiff. Because it did not have its own orthopedic physician examine plaintiff and testify regarding the results, it likens this case to the striking of an expert when the expert is the party's only, or most important, witness on a critical issue. See Dos Santos v. Carlson, 806 So.2d 539 (Fla. 3d DCA 2002) (reversing exclusion of defendant's most important witness who refuted the causal connection between the accident and the injury); Keller Indus. v. Volk, 657 So.2d 1200 (Fla. 4th DCA 1995). We cannot agree with this characterization.
This case had been pending for four years at the time of trial. At its first trial setting in 2000, the court excluded Dr. Silverstein whose opinions had not been *461 timely furnished to the University. The University claimed that it needed an independent medical examination in order to properly defend against the opinions of Dr. Silverstein. Before the University knew of Dr. Silverstein's examination of plaintiff, it was content to rely on the testimony of Dr. Kagan without the necessity of an independent examination. Thus, plaintiff would have called Dr. Lagatutta, an orthopedic physician, and the University would have called Dr. Kagan, a radiologist. After the case was not reached on the first trial docket, plaintiff included Dr. Silverstein's name in her list of witnesses for each ensuing trial period. The University did not request an independent examination for two years, except to try and schedule one a week before one trial setting, again untimely. However, in the meantime, it had received Dr. Silverstein's report, thus curing the timeliness problem for the use of his testimony by plaintiff.
Dr. Silverstein's testimony at trial was cumulative of the testimony of Dr. Lagatutta. Both testified that plaintiff sustained a herniated disc as a result of the accident, and both testified that she would need future medical treatment. If the University needed an orthopedic expert to examine plaintiff and testify as to the results of the examination, it would have needed it to defend against Dr. Lagatutta's testimony as well. Yet it did not ask for an examination until Dr. Silverstein was allowed as a witness. That Dr. Kagan could be impeached on cross-examination because he had not examined plaintiff would have been true regardless of the use of Dr. Silverstein's testimony. Thus, the jury would have been faced with a choice between Dr. Lagatutta's testimony, as an orthopedic physician who treated plaintiff and determined from his physical examination that the injury was caused by the accident, and Dr. Kagan's testimony as a radiologist who simply read plaintiff's MRI films.
The University's line of defense was that the accident did not cause the disc herniation and subsequent damages. It was still able to present that line of defense. While it had good cause to request an independent medical examination, it did not do so in a timely fashion. Although this issue is close, we do not conclude that the trial court abused its discretion in granting the protective order and thus disallowing the physical examination. We also harken back to section 59.041, Florida Statutes (1994), which states that "[n]o judgment shall be set aside or reversed ... unless in the opinion of the court ..., after an examination of the entire case it shall appear that the error complained of has resulted in a miscarriage of justice." We cannot find that a miscarriage of justice has occurred in this case.
As to the University's claim that the court erred in permitting Dr. Silverstein to testify as to causation, we conclude that no violation of Binger v. King Pest Control, 401 So.2d 1310 (Fla.1981), occurred.
Affirmed.
STEVENSON and GROSS, JJ., concur.