999 So.2d 678 (2008)
Shari Beth GOTTLIEB, as Personal Representative of the Estate of Martin J. Gottlieb, Deceased, for and on behalf of said Estate and the survivors thereof, Petitioner,
v.
Mohamad R. SAMIIAN, M.D., individually and doing business as Aesthetic & Plastic Surgery Clinic of Jacksonville; and M. Reza Samiian, M.D., P.A., Respondents.
No. 1D08-1751.
District Court of Appeal of Florida, First District.
December 5, 2008.
Rehearing Denied January 29, 2009.
*679 Stephen J. Pajcic, III, of Pajcic & Pajcic, P.A., Jacksonville; and William A. Bald of Dale, Bald, Showalter, Mercier & Green, P.A., for Petitioner.
Shelley H. Leinicke of Wicker, Smith, O'Hara, McCoy, Graham & Ford, P.A., Ft. Lauderdale; Craig A. Dennis of Dennis, Jackson, Martin & Fontela, P.A., Tallahassee; and Fred Tromberg, Jacksonville, for Respondents.
KAHN, J.
We have for certiorari review a petition brought by Shari Beth Gottlieb, plaintiff below in a civil action, alleging that medical malpractice caused the wrongful death of her son, Martin J. Gottlieb. The order on review granted a motion to disinter filed by respondents, defendants in the trial court. We view the motion to disinter as a discovery request. We have jurisdiction. See Staman v. Lipman, 641 So.2d 453 (Fla. 1st DCA 1994). Finding that the order on review departs from the essential requirements of law and will cause material harm that cannot be adequately remedied by appeal, we grant relief and quash the order.

FACTUAL AND PROCEDURAL BACKGROUND
This matter arises from a binding arbitration proceeding pursuant to section 766.207, Florida Statutes (2003). See Samiian v. Gottlieb, 958 So.2d 926 (Fla. 1st DCA 2007) (affirming per curiam an order of the circuit court requiring arbitration of this matter). In the arbitration proceeding, damages only, and not liability, are at issue before the assigned administrative law judge of the Florida Division of Administrative hearings. See § 766.207(7)(h), Fla. Stat. (2003).
*680 On April 13, 2004, Dr. Samiian performed a liposuction procedure on Martin Gottlieb, then age 32. Several hours after the procedure, Mr. Gottlieb suffered a heart attack and died. An autopsy performed the next day identified the cause of death as respiratory insufficiency due to complications of liposuction. No drug testing was performed in conjunction with the autopsy.
In early 2008, during the course of discovery, respondents filed a motion to disinter, seeking an order requiring exhumation of Mr. Gottlieb's remains for purposes of certain testing to "determine what substances were ingested by Mr. Gottlieb during the previous year before his death that could have affected his life expectancy." In an amended motion to disinter, respondents proffered two affidavits as factual support. These affidavits are before this court as appendices to the petition for certiorari. In his affidavit, Dr. Samiian quoted unnamed persons as having claimed that Mr. Gottlieb used "street drugs" and "phentermine," a diet medication. Dr. Samiian stated in the affidavit he would not have operated on Mr. Gottlieb had he known Mr. Gottlieb was using "these drugs." No further references or allegations concerning Martin Gottlieb's alleged drug use appear in the affidavit, which is less than a page long.
Dr. Steven Karch, a forensic pathologist, also signed an affidavit. The pertinent portion of this affidavit states:
4. At the request of counsel for Reza Samiian, M.D., I have been asked whether hair samples from a decedent who has been interred for approximately 3½ years would show evidence of drug use by the decedent if such drug use had occurred. It is my opinion, within a degree of medical certainty that hair samples would continue to show evidence of drug use. Depending upon the drugs that are found, such use may impact on the decedent's life expectancy. This will require a forensic examination of the hair samples before a final opinion can be rendered on this issue.
After a hearing, and upon review of these affidavits, the administrative law judge determined that because Mr. Gottlieb's life expectancy is at issue, "the discovery sought is reasonably calculated to lead to the discovery of admissible evidence." Accordingly, the administrative law judge granted the motion and directed that petitioner's decedent be exhumed in order to facilitate a pathological examination of hair samples.

ANALYSIS
A litigant seeking common law certiorari to review a discovery order must demonstrate both a departure from the requirements of law and material harm that cannot be adequately remedied by appeal. See Staman, 641 So.2d at 454. It can be safely said here that if we find a departure from the requirements of law, the material harm element will follow, without further showing, given the nature of the order for which petitioner seeks review.
Although Florida has no disinterment statute, case law has allowed such a vehicle for discovery in a civil proceeding. See Ullendorff v. Brown, 156 Fla. 655, 24 So.2d 37 (1945); Hammer v. Rosenthal Jewelers Supply Corp., 558 So.2d 460 (Fla. 4th DCA 1990); Esgro v. Trezza, 492 So.2d 422 (Fla. 4th DCA 1986); cf. Landrum v. Armstrong World Indus., Inc., 535 So.2d 656 (Fla. 3d DCA 1988) (denying certiorari review of order for autopsy entered while plaintiff still alive). Because the order here arose in the context of discovery, we find it appropriate to turn for guidance to *681 Florida Rules of Civil Procedure 1.280 and 1.360. See Landrum, 535 So.2d at 657 (Jorgenson, J., dissenting); Esgro v. Trezza, 492 So.2d at 423 (Dell, J., dissenting); see also Fla. Prac., Personal Injury and Wrongful Death Actions, § 25.7(k), n. 115, Vol. 6 (2008 ed.).
"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of the pending action...." Fla. R. Civ. P. 1.280(b)(1). A physical examination, in the context of civil litigation, "is authorized only when the party submitting the request has good cause for the examination." Fla. R. Civ. P. 1.360(a)(2). Further, "the condition that is the subject of the requested examination [must be] in controversy." Fla. R. Civ. P. 1.360(a)(1). Finally, "the party submitting the request shall have the burden of showing good cause." Fla. R. Civ. P. 1.360(a)(2). Florida agrees with the federal requirements of "in controversy" and "good cause," as interpreted by the United States Supreme Court. These requirements
are not met by mere conclusory allegations of the pleadingsnor by mere relevance to the casebut require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination.
Russenberger v. Russenberger, 639 So.2d 963, 965 n. 4 (Fla.1994) (quoting Schlagenhauf v. Holder, 379 U.S. 104, 118, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964)); see also S.N. v. Dep't. of Health & Rehab. Servs., 529 So.2d 1156 (Fla. 1st DCA 1988); Kristensen v. Kristensen, 406 So.2d 1210 (Fla. 5th DCA 1981). Accordingly, although relevance is a threshold for an examination, and certainly for the exhumation ordered here, what the courts have referred to as "mere relevance" is not sufficient.
To determine the appropriate scope of discovery in this unusual instance, we must examine cases that have set out the type of showing upon which the measure sought here could be properly based. In each earlier civil case allowing a similar measure, the showings made by the party seeking disinterment far exceed the showings in the present case. In Esgro, for instance, a deposition of the Broward County medical examiner revealed a "good possibility" that an autopsy would be probative as to cause of death. 492 So.2d at 423. The same medical expert also stated on deposition that the possibility that the deceased actually died from a heart attack, as alleged in the medical malpractice claim in that case, was "fairly remote." Id.
In Hammer, with the cause of death also at issue, medical evidence before the court "tended to show an autopsy would likely provide relevant information." 558 So.2d at 461. In Landrum, the court, even before death of the plaintiff, entered an order requiring an autopsy. 535 So.2d at 656. In that case, involving asbestos litigation, the order did not specifically require disinterment and, moreover, was tailored to produce tissue in order to allow microscopic analysis. Id. n. 1. Although not directly stated by the court, we find it relatively clear that the autopsy ordered in Landrum was for the purpose of determining the fact and extent of exposure to asbestos, the fulcrum of the entire case.
Our supreme court has addressed a similar question regarding the propriety of disinterment in the context of a probate case. In Ullendorff, the court allowed exhumation to determine heirs to the estate. 24 So.2d at 40. Specifically, the evidence before the court showed that an autopsy would determine whether the decedent had ever even given birth to a child. Id. As respondents point out, any number of *682 Florida cases have allowed disinterment in the context of criminal cases, where cause of death is the primary issue before the court. See, e.g., Buenoano v. State, 527 So.2d 194 (Fla.1988) (exhumation of body thirteen years after burial to determine suspected arsenic poisoning where no toxicological assay was performed at time of death because of then-absence of suspicion of toxic poisoning; same analysis showed chronic arsenic poisoning over a period of time); State v. Norris, 168 So.2d 541 (Fla. 1964) (bodies of deceased husband and business associate of accused were exhumed ten years after death to examine for presence of arsenic); Coppolino v. State, 223 So.2d 68 (Fla. 2d DCA 1969) (exhumation of body for various chemical analyses and drug testing showed drug overdose caused death).
The showing in the present case falls short of that required by the existing case law in two respects. First, cause of death is not at issue. Although the administrative law judge observed correctly that life expectancy would be an issue in the arbitration, the same could be said of almost any wrongful death action because the trial court must generally consider the life expectancy of the decedent. See §§ 766.207(7), 768.21(1), Fla. Stat. (2003). We decline to automatically reach a conclusion that disinterment as ordered here will meet the controlling standards of discovery merely because life expectancy is a potential issue.
These last observations bring us to the second distinction between the present case and the cases relied upon by respondents. The showing by Dr. Samiian's affidavit concerning Mr. Gottlieb's use of drugs is about as thin as any showing could be. Dr. Samiian relies upon an anonymous source who stated, according to the affidavit, that "prior" to the surgery in question, Mr. Gottlieb had used "recreational drugs" or "street drugs." The affidavit does not reveal the source of the information; it does not reveal the time period of the alleged drug use; and it does not reveal the street drugs allegedly used, their frequency of use, or their effect, if any, on Mr. Gottlieb's health before the surgery. Thus, the evidence before the administrative law judge did not meet the standards established in Hammer or Esgro. See Hammer, 558 So.2d at 461 (evidence "tended to show an autopsy would likely provide relevant information"); Esgro, 492 So.2d at 423 (evidence indicated "a good possibility" autopsy would be revealing as to cause of death).
We have not overlooked Dr. Karch's affidavit. Without the underpinning, however, of some showing that the results of the autopsy would likely be probative, the affidavit can only be read as suggesting, as something of a truism, that an autopsy would show evidence of drug use, if drug use had occurred. Thus, Dr. Karch can add nothing to the threshold requirements of relevance and good cause.
Finally, we find an over-arching distinction between all cases relied upon by the respondent and the present case. In each case cited to us by respondent, the results of the autopsy would be relevant, no matter what the findings. This is true because in each of the cases we have discussed above, some characteristic of the decedent, or the cause of the decedent's death, was at issue, and such would be revealed, one way or the other, by an examination. See Nichols v. State, 64 Fla. 381, 60 So. 181 (1912) (exhumation of child's body to identify fractures); Lambright v. State, 34 Fla. 564, 16 So. 582 (1894) (exhumation of body to extract bullet); Villella v. State, 833 So.2d 192 (Fla. 5th DCA 2002) (exhumation to determine if two bodies were in casket); Albritton v. State, 769 So.2d 438 (Fla. 2d DCA 2000) *683 (exhumation of body to determine if hand was missing); Conine v. State, 752 So.2d 4 (Fla. 1st DCA 2000) (exhumation of child's remains after fractures were discovered on surviving twin). In the present case, however, a finding that did not confirm Dr. Samiian's theory would not be relevant to an issue in this arbitration proceeding.

CONCLUSION
Courts of Florida have observed a fairly high standard for certiorari review of a discovery order. See Martin-Johnson, Inc. v. Savage, 509 So.2d 1097 (Fla.1987). Taking the standard into account, however, we have little difficulty finding the order at hand allows dramatic relief, without a sufficient underlying showing. Nothing in this record establishes a substantial likelihood that relevant information will be revealed by an autopsy. Under these circumstances, and in accordance with the law, we GRANT the writ of certiorari and QUASH the order on review.
BENTON, J., concurs; BARFIELD, J., dissents with opinion.
BARFIELD, J., dissenting.
The majority opinion correctly states that a petitioner seeking certiorari review must demonstrate both that the lower court's ruling departed from the essential requirements of law and that the ruling will result in material harm for which there is no adequate remedy on plenary appeal. Given the certiorari standard, this court's only concerns in determining whether the ALJ's discovery order departed from the essential requirements of law is whether the record supports the ALJ's finding that the proposed discovery is likely to lead to relevant evidence and whether the ALJ abused her discretion in granting the discovery request.
The record demonstrates that there was an adequate showing of the likelihood that exhuming the body of the decedent would reveal whether the decedent was a drug user, and if so, whether his use of drugs would have affected his life expectancy. There being adequate evidence to warrant that investigation, there was no abuse of discretion. The petition should be denied on the merits.