24 So.3d 571 (2009)
Jessica Lauren WICKY, Petitioner,
v.
Crisanto C. OXONIAN as Personal Representative of the Estate of Maria I. Oxonian, Respondent.
No. 2D08-2853.
District Court of Appeal of Florida, Second District.
August 7, 2009.
Rehearing Denied January 6, 2010.
Alan S. Zimmet and T.R. Unice, Jr. of Zimmet, Unice & Salzman, P.A., Clearwater, for Petitioner.
*572 Lorraine E. Robinson of Perenich, Carrol, Perenich, Caulfield, Avril, Noyes & Perenich, P.A., Clearwater, for Respondent.
NORTHCUTT, Judge.
In December 2006, Jessica Wicky passed out while driving, and her car collided with another vehicle. The other driver, Maria Oxonian, was killed. During the police investigation of the accident, Ms. Wicky either impliedly or actually consented to giving a sample of her blood to be analyzed for alcohol content and the presence of controlled or chemical substances. See §§ 316.1932-.1933, Fla. Stat. (2006). The analysis disclosed no alcohol or controlled substances, and to date the State has not prosecuted Ms. Wicky for her role in the accident. The blood tests consumed all but a small portion of the sample, which remains in the possession of the Pinellas County Forensic Laboratory.
The personal representative of Ms. Oxonian's estate, Crisanto Oxonian, filed a negligence action against Ms. Wicky to recover for Ms. Oxonian's wrongful death. Mr. Oxonian filed a discovery request seeking permission to test the surviving portion of Ms. Wicky's blood sample for the presence of Benzonatate, a prescription cough medication. The circuit court entered an order granting the request. Ms. Wicky then filed this petition for certiorari seeking to quash the order. We grant the petition.
Mr. Oxonian's motion did not identify the rule of civil procedure that would authorize the testing of an opposing party's blood, other than to mention the general discovery rule, Fla. R. Civ. P. 1.280. Ms. Wicky has theorized that the motion was governed by Florida Rule of Civil Procedure 1.350, which addresses production of documents and things. However, in light of the associated privacy concerns and inherent intrusiveness of such an endeavor, we conclude that a request to test human bodily fluids in a civil action must satisfy the requirements of rule 1.360, "Examination of Persons." See Simons v. Jorg, 384 So.2d 1362, 1363 (Fla. 2d DCA 1980). The more stringent aspects of this rule protect the interest a party has in the integrity of his or her person, an interest that surpasses, say, the interest a party may have in some document or piece of personal property. Although Ms. Wicky's blood has already been drawn, and a further invasion of her body would not be necessary, she continues to have an interest that rule 1.360 is meant to protect. See Gottlieb v. Samiian, 999 So.2d 678 (Fla. 1st DCA 2008) (discussing rule 1.360 in the context of a motion to test a body for substances ingested during the year before death).
A certiorari petition is the appropriate vehicle for challenging an order granting a compulsory physical examination pursuant to rule 1.360. See State Farm Mut. Auto. Ins. Co. v. Shepard, 644 So.2d 111 (Fla. 2d DCA 1994); Nobbe v. Nobbe, 627 So.2d 59 (Fla. 2d DCA 1993). Certiorari relief "is appropriate when a discovery order departs from the essential requirements of law, causing material injury to a petitioner throughout the remainder of the proceedings below and effectively leaving no adequate remedy on appeal." Harley Shipbuilding Corp. v. Fast Cats Ferry Serv., LLC, 820 So.2d 445, 448 (Fla. 2d DCA 2002) (quoting Allstate Ins. Co. v. Langston, 655 So.2d 91, 94 (Fla.1995)).
Here, the requested discovery is of an irreparable nature. Very little of the blood drawn during the accident investigation remained after law enforcement completed its tests. The parties agree that the further testing Mr. Oxonian seeks would leave insufficient blood for any additional testingas a practical matter, the sample would be destroyed. Thus, we easily *573 find that Ms. Wicky has met the "material injury" and "no adequate remedy on appeal" prongs. We therefore focus on the issue of whether the circuit court's order departed from the essential requirements of law.
Rule 1.360(a)(1) allows a party to request that another party submit to an examination if the condition that is the subject of the examination is "in controversy." Additionally, an examination is authorized only when the requesting party "has good cause" for the examination. Fla. R. Civ. P. 1.360(a)(2). The burden of proving these two requirements rests with the party seeking the examination. The Florida Supreme Court has noted that these burdens
are not met by mere conclusory allegations of the pleadings-nor by mere relevance to the case-but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination.
Russenberger v. Russenberger, 639 So.2d 963, 965 n. 4 (Fla.1994) (quoting Schlagenhauf v. Holder, 379 U.S. 104, 118, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964)). The requesting party must present evidence to meet its burdens. An evidentiary hearing, or verified affidavits or pleadings, are sufficient to meet the rule's requirements. Russenberger, 639 So.2d at 965.
Because the parties in this case did not view Mr. Oxonian's discovery request as one under rule 1.360, they did not appreciate the burdens imposed under that rule. Thus, no evidence was presented at the hearing on Mr. Oxonian's request; no affidavits were filed, and counsel merely argued in support of the test.
We have interpreted the "in controversy" requirement to mean that the alleged condition "must directly involve a material element of the cause of action." Williams v. Williams, 550 So.2d 166, 167 (Fla. 2d DCA 1989). The motion to test Ms. Wicky's blood did not address how the test related to the elements of Mr. Oxonian's cause of action. It merely asserted that "Jessica Wicky had admitted to taking Nyquil, Benzonatate and Deconamine prior to driving her vehicle the morning of December 12, 2006. Defendant, Jessica Wicky while driving her vehicle passed out." At the hearing on the motion, Mr. Oxonian's counsel explained that Benzonatate is a prescription cough medicine. But he offered no evidence of how the presence of this drug in Ms. Wicky's blood at the time of the accident might relate to the matter "in controversy," i.e., Ms. Wicky's negligence. Cf. Gottlieb, 999 So.2d at 682 (involving a request for disinterment to test a body for drug use and noting that the evidence presented did not reveal the effect of the drugs supposedly taken on the health of the decedent). The order permitting the blood test departs from the essential requirements of law because Mr. Oxonian failed to meet the burden of proof set forth in Russenberger. We quash the order on this basis alone.
In the event Mr. Oxonian wishes to further pursue this discovery, he must follow the dictates of rule 1.360. Accordingly, we offer the following observations to guide the parties and the court.
In the vast majority of strictly civil casesi.e., medical malpractice or automobile accident suits versus dissolution or paternity actionsit is the defendant who seeks to examine the plaintiff under rule 1.360. In such cases the "in controversy" test is easily met because the plaintiff has put his or her own medical condition in issue by claiming damages based on the condition. See Dimeglio v. Briggs-Mugrauer, 708 So.2d 637, 639 (Fla. 2d DCA 1998); see also Leinhart v. Jurkovich, 882 *574 So.2d 456, 460 (Fla. 4th DCA 2004). Our research has uncovered only one case in the posture presented here, i.e., a plaintiff seeks to examine a defendant under rule 1.360. See Gasparino v. Murphy, 352 So.2d 933 (Fla. 2d DCA 1977).
In Gasparino, Ms. Murphy, the personal representative of a man killed while resisting law enforcement, brought a wrongful death action against a police officer. Her complaint alleged the officer, Gasparino, was negligent and had used excessive force. She sought to subject him to a psychiatric examination, claiming there was "a controversy . . . as to the mental state of the defendant." Id. at 934. In quashing the order permitting the examination, we held that Gasparino's mental state was not the issue in the case:
Rather, it is his conduct which is at issue; specifically whether such conduct was negligent, unreasonable or involved the use of excessive force. While [Gasparino's] mental state may shed some light on why he acted as he did, it is not involved in either establishing the standard of care or in determining whether or not it has been violated.
Id. at 935.
Mr. Oxonian's burden, then, is to present evidence of how the presence of this cough medicine in Ms. Wicky's blood would establish her negligence. Absent such proof, he cannot succeed in his request.
While we have so far focused on the "in controversy" requirement of rule 1.360, that is only the first step in the requesting party's burden of proof. If the party meets that portion of the burden, it must then prove "good cause" for the desired test. In the general civil context, we have found no cases that set out parameters of "good cause" for testing an opponent's blood. Issues concerning compelled examination of bodily fluids usually arise in the context of paternity actions. In such cases, the compelled blood test likely would decide the issue in controversy, and thus good cause for the test is established. It does not appear that the discovery requested in this case would be as conclusive. But, as noted, Mr. Oxonian did not attempt to show good cause because he was not proceeding under rule 1.360. If he wishes to pursue this discovery, he will have the opportunity to do so.
In all discovery matters the competing interests of the parties must be balanced. If further discovery of Ms. Wicky's blood is sought, we note that her certiorari petition claims such a test would violate her privacy rights. She also points out that she has an interest in preserving her right to test the blood sample herself under the implied consent law, § 316.1932(1)(f), Fla. Stat. (2006), and that she would be unable to do so if Mr. Oxonian is permitted to destroy the blood sample with his testing. No doubt, if Mr. Oxonian pursues his request, he will set forth his own interests in testing the blood. We offer no opinion on this matter, other than to reiterate that the court should balance the parties' interests. See Russenberger, 639 So.2d at 965-66; Rasmussen v. S. Fla. Blood Serv., Inc., 500 So.2d 533, 535 (Fla.1987). Additionally, the State, the Pinellas County Sheriff's Department, and the Pinellas County Forensic Laboratory, where the evidence is being held, may each have an interest in the outcome of any discovery request concerning the blood. If Mr. Oxonian proceeds in his attempt to test the blood, these entities must be noticed and given the opportunity to appear. Their interests, if any, must be balanced along with the parties' interests.
Finally, Ms. Wicky contends that the circuit civil court does not have jurisdiction over this matter. Evidence obtained *575 in connection with a criminal proceeding is held in custodia legis by the court. Stevens v. State, 929 So.2d 1197, 1198 (Fla. 2d DCA 2006). As Ms. Wicky correctly points out, the criminal court has inherent jurisdiction over such evidence and civil courts should not be permitted to intrude on pending criminal matters. See Garmire v. Red Lake, 265 So.2d 2, 4-5 (Fla.1972). We agree with this proposition, but it cannot be applied here because Ms. Wicky has never been prosecuted; hence there has been no involvement of the criminal court. Moreover, although most circuit courts are divided into divisions for efficiency of administration, all circuit court judges may hear and rule on any case within the circuit court's jurisdiction. Payette v. Clark, 559 So.2d 630, 633 (Fla. 2d DCA 1990). Thus, the judge presiding over the civil case does have jurisdiction to decide this matter.
We grant Ms. Wicky's petition and quash the order granting Mr. Oxonian's motion to test the blood sample.
WHATLEY, J., Concurs.
LaROSE, J., Dissents with opinion.
LaROSE, Judge, Dissenting.
I dissent. A small blood sample remains. Further testing will consume it. Although the underlying accident occurred almost three years ago, Ms. Wicky still fears prosecution. Her claimed need to maintain the sample for unspecified testing at an unspecified time for purposes of defending against possible criminal charges propels the matter to us.
Our certiorari review is constrained. We may quash the order only if Ms. Wicky demonstrates a departure from the essential requirements of law that causes material and irreparable harm. See DeLoach v. Aird, 989 So.2d 652, 654 (Fla. 2d DCA 2007). The order is tentative. It causes neither material nor irreparable harm. I would dismiss the petition.
Ms. Wicky's argument distills to two points. First, testing will destroy Ms. Wicky's ability to conduct her own future tests. Second, the State Attorney should participate in this discovery matter. The order addresses both concerns.
Immediate testing is unavailable. Pending further direction from the trial court, the sample remains with the Pinellas County Forensic Laboratory. Additionally, proceedings before the trial court reflect that the State Attorney must be given notice of and allowed to weigh in on all further proceedings related to the testing.
More critical, however, the trial court recognized Ms. Wicky's potential need to conduct her own testing. As a result, further court action must precede any testing contemplated by Mr. Oxonian. The order directs the parties to confer "as to the selection of a laboratory and testing methods for the Court's consideration." The reason is clear: so Ms. Wicky can propose methodologies that will enable her to do her own contemporaneous tests. As the trial court made clear at its May 1, 2008 hearing:
I just want to see if there is a means to give everyone access at the same time to testing if that can be possible. . . . [B]arring some proposal that is reasonable and more appropriate I'm going to do it in the fashion that is being sought by plaintiff, but I want to give the defense the opportunity to tell me that they want to have it done in another way and have me consider that.
Ms. Wicky understands that the order is not etched in stone:
[Counsel]: How about an order granting plaintiff's request; however, the manner and who will be doing the testing and what testing will be performed will be done pursuant to an additional order of the Court.

*576 The Court: All right. That sounds like a fair means of handling it.
Properly understood, the order addresses adequately Ms. Wicky's dual concerns. Its tentative nature compels me to see no material, irreparable injury. See Senior Care Group, Inc. v. Estate of Fischer ex rel. Woodworth, 12 So.3d 766 (Fla. 2d DCA 2009).
Because I would dismiss the petition, I will not dwell on the issue of whether the trial court departed from the essential requirements of law in analyzing the discovery motion under rule 1.280. I will observe, however, that it is not plainly evident that the trial court must analyze the motion under rule 1.360. That rule addresses examinations of persons. The blood sample was not obtained in connection with a physical examination conducted in ongoing litigation. I recognize that application of rule 1.360 may be preferable. However, an adequate legal analysis that addresses all competing interests could be done under the more general discovery rules. See Fla. R. Civ. P. 1.280(a), (b)(1), (C), 1.350. In my view, to do so does not constitute a departure from the essential requirements of law.