KELLY, Judge.
In this certiorari petition, Adrian Doe, III, and Evelyn Doe seek to quash an order that would compel them to provide a DNA sample (via buccal swab)[1] to establish the paternity of Madelin Roe, a nine-year-old child who claims she is the child of the Does’ deceased father, Adrian W. Doe, Jr.[2] This petition arises from a declaratory judgment action brought by Sun-trust Bank in its capacity as Trustee for various trusts established by Adrian Doe, Jr. The trusts provide that upon Doe’s death, the remaining assets are to be held in trust for the benefit of his “children” or “descendants” in equal shares. When Suntrust learned that Madelin and a second child, Maria Coe, might be Doe’s children, and thus beneficiaries of his trusts, it brought the declaratory judgment action against Evelyn, Adrian, Madelin, and Maria to determine the beneficiaries of the trusts.
Suntrust’s verified complaint alleges that Adrian and Evelyn are Doe’s legitimate children, and that Maria and Made-lin, who were born in Costa Rica, may be his children through relationships with Wendy Coe and Erika Roe, respectively. According to the complaint, Doe was never married to either girl’s mother, however, the Civil Registry in Costa Rica identifies Maria as the child of Doe and Wendy Coe. The Civil Registry is silent regarding the identity of Madelin’s father, however, according to the complaint, Erika has “made informal claims” that Doe is Madelin’s father. Adrian and Evelyn denied that Doe was the girls’ father, and they have actively opposed the guardians’ efforts to establish that the girls are his children, and thus, beneficiaries of his trusts.
At the request of the Trustee, the court appointed guardians ad litem to represent the girls in the litigation. The guardians traveled to Costa Rica to meet with their respective wards and further investigate the claims of paternity and compile evidence supporting the claims. Although Adrian and Evelyn have challenged their accuracy and authenticity, Maria’s guardian provided the court with documents from the Civil Registry that identify Doe as Maria’s father, including a document bearing Doe’s signature and passport number. Faced with the absence of any official record establishing that Doe was Madelin’s father, Madelin’s guardian ad litem sought an order compelling Adrian and Evelyn to each provide a buccal swab sample for testing to determine the paternal relationship between Madelin and Doe. Madelin’s motion indicates that she and her mother have already submitted a DNA sample for that purpose.
In support of her motion, Madelin cited *136 section 742.12, Florida Statutes (2005),[3] which provides for scientific testing in actions to determine paternity. Adrian and Evelyn objected stating that the court was without authority to compel them to submit to DNA testing because section 742.12 provides for testing of only the mother, child, and alleged fathers, not the legitimate children of a deceased putative father. The court denied Madelin’s motion.
Madelin filed a second motion, this time citing section 732.108(2)(b), Florida Statutes (2005),[4] which recognizes that a child born out of wedlock may obtain an adjudication of paternity after the death of the father, and case law recognizing that paternity can be established in a proceeding to determine the beneficiaries of a trust. Adrian and Evelyn again objected arguing that the court was without authority to compel them to submit to DNA testing. Additionally, the Does argued that section 760.40, Florida Statutes (2005), prohibits the court from ordering them to submit a DNA sample for testing. After a hearing, the court, citing section 732.108, granted Madelin’s motion. Adrian and Evelyn then filed this petition for certiorari asking us to quash the order.
We view Madelin’s motion for DNA testing as a discovery request and the trial court’s order as one compelling discovery. Certiorari is the appropriate vehicle to obtain relief from orders granting discovery. See Martin-Johnson, Inc. v. Savage, 509 So.2d 1097, 1099 (Fla.1987). To obtain relief, the petitioner must demonstrate that the order departs from the essential requirements of law, causing material injury to the petitioner throughout the remainder of the proceedings which cannot be remedied on appeal. See id. Given the nature of the order at issue in this case, if we find that it departs from the essential requirements of law, the material harm element will follow. See Gasparino v. Murphy, 352 So.2d 933, 935 (Fla. 2d DCA 1977). Consequently, we turn to the question of whether the trial court’s order departs from the essential requirements of law.
The petitioners first contend that the trial court was not authorized to compel them to submit a buccal swab sample for testing to determine the paternal rela *137 tionship between Madelin and Doe. Preliminarily, we note that paternity may be determined in an action for declaratory relief, see, e.g., Kendrick v. Everheart, 390 So.2d 53, 58-60 (Fla.1980) (recognizing the father’s right to bring a declaratory judgment action to determine paternity); Rogers v. Runnels, 448 So.2d 530, 532 (Fla. 5th DCA 1984) (recognizing a child’s right to bring an action for declaratory relief to determine paternity after the child reaches majority), including an action brought by a trustee to determine the beneficiaries of a trust. See Knauer v. Barnett, 360 So.2d 399 (Fla.1978) (reviewing a determination of paternity sought by a trustee in a declaratory judgment action to determine the parties entitled to receive the income and corpus of a trust). As in any other civil action, the Rules of Civil Procedure apply to an action to determine the beneficiaries of a trust. See § 736.0201(1), Fla. Stat. (2007). Rule 1.280(b)(1) provides that “[pjarties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party,” and rule 1.380 provides that the court may compel a party to comply with a discovery request. Because Doe’s trusts provide that his “children” are the beneficiaries, the issue of Madelin’s and Maria’s paternity is relevant to the subject matter of the action. Accordingly, we conclude that the trial court would have the authority to order Adrian and Evelyn to provide a buccal swab sample for testing to determine the paternal relationship between Doe and Madelin unless somehow prohibited by other law.
Adrian and Evelyn contend that section 760.40 prohibits the court from ordering them to submit to DNA testing.[5] Specifically, they point to the passage in subsection (2)(a) that states: “DNA analysis may be performed only with the informed consent of the person to be tested.” Our first difficulty with the petitioners’ interpretation of this language is that they base it on the flawed assumption that *138 DNA analysis performed pursuant to an order compelling discovery does not satisfy the informed consent requirement. In the context of this statute, informed consent is an aspect of the relationship between a DNA analyst and the person whose DNA is to be analyzed — it has nothing to do with the reason an individual may be providing a sample for testing. From the perspective of an entity or individual performing DNA analysis, when an individual presents themselves and provides a DNA sample for analysis, they have consented to having the analysis performed. The fact that the individual may have done so pursuant to a court order is beside the point in determining whether, from the analyst’s perspective, an individual has consented to having their DNA analyzed.
Nor does the plain language of the statute support the construction offered by the petitioners. Section 760.40 is aimed at two types of individuals or entities: those who analyze DNA and those who receive the records, results, or findings of the analysis. It criminalizes performing DNA analysis or disclosing the results without obtaining the informed consent of the person tested. See § 760.40(2)(b). It also provides confidentiality for results held by public entities by exempting them from the public records law. See § 760.40(2)(a). Finally, it requires that the person tested be notified that the analysis was performed and whether the information was used in any decision to grant or deny any insurance, employment, mortgage, loan, credit or educational opportunity. See § 760.40(3).
Viewed as a whole, it appears to us that the primary purpose of the statute is to protect individuals who undergo DNA analysis by requiring informed consent before the analysis is performed, by providing confidentiality for the results, including exempting the results from disclosure as a public record, by providing control over how the results are disclosed, and by requiring notification that the analysis was performed and how it was used. The exceptions in subsection (2)(a) are circumstances in which the legislature chose not to afford these protections.[6] They are not, as the petitioners contend, the only circumstances in which a court may order testing.[7] The petitioners’ contention that the exceptions listed in section 760.40 represents the only circumstance in which a court is authorized to order an individual to submit to DNA testing, ignores the reality that courts routinely order DNA testing under a variety of circumstances not specified in section 760.40.[8] Aecord- *139 ingly, we reject the petitioners’ contention that the trial court was categorically prohibited from ordering them to provide a DNA sample for testing to determine the paternal relationship between Doe and Madelin.
Although we reject the contention that the trial court was categorically prohibited from ordering the petitioners to submit a buccal swab sample for testing, we must still determine whether the court’s order in this case conforms to the essential requirements of law. Procedurally, this case is similar to Wicky v. Oxonian, 24 So.3d 571 (Fla. 2d DCA 2009). In Wicky, the personal representative of an estate pursuing a wrongful death claim filed a discovery request seeking permission to test an existing sample of the defendant’s blood. The personal representative’s motion did not identify the rule of civil procedure that authorized the testing, although it mentioned rule 1.280, the general discovery rule. The defendant thought the request was made under rule 1.350, which addresses the production of documents and things. This court concluded that neither rule governed the request, and that “a request to test human bodily fluids in a civil action must satisfy the requirements of rule 1.360, ‘Examination of Persons.’ ” Id. at 572-73. Because the parties did not view the discovery request as one under rule 1.360, they did not focus on the rule’s “good cause” and “in controversy” requirements when presenting their arguments to the trial court. See Fla. R. Civ. P. 1.360(1), (2). Ultimately, this court found that because of this, the movant had not met his burden under the rule and consequently, the order permitting the blood to be tested departed from the essential requirements of law.
We find the parties here in much the same situation. Madelin’s request did not identify the rule of civil procedure that would have authorized the test, and the petitioners apparently never considered the applicability of any of the rules. Initially, we conclude that a request to submit a buccal swab sample for DNA testing should satisfy the “good cause” and “in controversy” requirements of rule 1.360 even though the rule is not a precise fit given that the petitioners are not being examined, but rather, are being asked to produce something — cheek cells from the inside of their mouths. Although the test is noninvasive and involves cells rather than bodily fluids, we conclude that the reasoning in Wicky is applicable here, and it requires that such requests be afforded the protections found in rule 1.360. Additionally, without specifically analyzing its applicability, courts in this state have looked to rule 1.360 to determine the propriety of orders requiring DNA testing when the testing was not ordered pursuant to a particular statute that provided for such testing. See, e.g., Stevens v. Dep’t of Revenue ex rel. Beltran, 790 So.2d 1182 (Fla. 2d DCA 2001); Dep’t of Revenue ex rel. Chambers v. Travis, 971 So.2d 157 (Fla. 1st DCA 2007); Dep’t of Revenue ex rel. Freckleton v. Goulbourne, 648 So.2d 856 (Fla. 4th DCA 1995).
A party may request an examination under rule 1.360 if the condition that is the subject of the examination is in controversy and the requesting party has good cause for the examination. Fla. R. Civ. P. 1.360(1), (2). The movant must *140 make an affirmative showing that the “ ‘condition as to which the examination is sought is really and genuinely in controversy’ ” and that good cause exists for ordering the examination. Gasparino, 352 So.2d at 935 (quoting Schlagenhauf v. Holder, 379 U.S. 104, 118, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964)). As explained in Schlagenhauf:
This does not, of course, mean that the movant must prove his case on the merits in order to meet the requirements for a mental or physical examination. Nor does it mean that an evidentiary hearing is required in all cases. This may be necessary in some cases, but in other cases the showing could be made by affidavits or other usual methods short of a hearing. It does mean, though, that the movant must produce sufficient information, by whatever means, so that the [trial] judge can fulfill his function mandated by the Rule.
Id. at 119, 85 S.Ct. 234; see also Russenberger v. Russenberger, 639 So.2d 963, 965 (Fla.1994) (holding that the trial court departed from the essential requirements of the law by permitting compulsory examinations under the discovery rule without determining whether the rule’s “good cause” and “in controversy” requirements had been satisfied). Although the pertinent pleadings in this case are verified, and thus could potentially satisfy the burden imposed on Madelin, we conclude that under the facts of this case, they are not sufficient. For that reason, the order compelling Adrian and Evelyn to provide a buccal swab sample departs from the essential requirements of law, and we grant the petition and quash the order.
Because it seems likely that Madelin will again attempt to obtain discovery to assist her in establishing that she is a beneficiary of Doe’s trusts, and because a request to test the relatives of a deceased putative father in the context of an action to determine the beneficiaries of a trust presents some unique issues, we believe it is appropriate to offer the parties and the court some guidance should this issue arise again.
First, we note that the issue of whether Madelin is Doe’s child, and thus a beneficiary of his trusts, is clearly at the heart of this litigation. However, thus far, it appears that the only pleadings suggesting she may be his child are the Trustee’s verified complaint, which simply attests to the Trustee’s knowledge that Madelin claims to be Doe’s child and her verified motion to compel testing which states only that she “maintains she is a child born out of wedlock” to Doe. We believe something more is required, for example, an affidavit from Madelin’s mother alleging paternity and setting forth facts establishing a reasonable possibility of the requisite sexual contact with Doe. See § 742.12(2) (requiring a sworn statement or declaration under penalty of perjury alleging paternity and setting forth facts establishing a reasonable possibility of the requisite sexual contact between the parties as a perquisite to obtaining an order for scientific testing). Such an affidavit would satisfy the requirement that the subject matter of the test be “really and genuinely” in controversy. See Schlagenhauf, 379 U.S. at 119, 85 S.Ct. 234.
Madelin will also have to demonstrate “good cause” for her request that Adrian and Evelyn be required to provide a buccal swab sample for testing. In the typical paternity action, a compelled DNA test is dispositive of the issue in controversy, and thus good cause for the test is established. See Wicky, 24 So.3d at 574. This case is not, however, a typical paternity case because it is the legitimate children of the deceased putative father who are being asked to submit a sample of their DNA for *141 testing. Under these circumstances, we believe two considerations are important in determining the existence of good cause. First, it would seem appropriate that Madelin provide some evidence that a comparison of her DNA with the DNA of Doe’s legitimate children could produce a result that would tend to prove or disprove the existence of a genetic link between Doe and Madelin. Second, it would also seem appropriate to require that she make some showing of need. For example, in the arguments presented to this court, Madelin and the Trustee have indicated that Doe was cremated, thus eliminating the possibility of any comparison with a sample derived from his remains. As far as we can tell, this fact was not presented as evidence in the trial court. Likewise, while the Trustee’s verified complaint suggests that no official documentation exists that would allow Madelin to establish that Doe is her father, it seems reasonable to require a more definitive statement to that effect, perhaps from Madelin’s guardian ad litem.
Finally, as we explained in Wicky, in all discovery matters the competing interests of the parties must be balanced. 24 So.3d at 576. Doe did not name specific beneficiaries in his trusts; instead he instructed that the assets in the trusts be divided among his children. Other language in the trusts indicates he contemplated the possibility of having children other than Adrian and Evelyn. Given that this is an action to determine the beneficiaries of his trusts, consideration should be given to effectuating his intent as expressed in the trusts. As for Madelin, if she is in fact Doe’s child, her rights with respect to the trusts are equal to those of Evelyn and Adrian. Further, her interests are akin to those of an out of wedlock child seeking to share in the intestate estate of a parent. Florida recognizes the right of an out-of-wedlock child to share in a parent’s estate. See § 732.108(2). Florida also recognizes the right of a child born out of wedlock to establish paternity after the death of the father. See § 732.108(2)(b). For that right to be meaningful, the child must have a fair opportunity to prove that the deceased is her father. What is fair may vary from case to case, but any evaluation should take into account the heightened burden of proof imposed on out-of-wedlock children who seek to establish paternity after the death of the putative father. See Berkey v. Odom (In re Estate of Odom), 397 So.2d 420 (Fla. 2d DCA 1981) (holding that in an action to establish paternity after the death of the father, proof of paternity shall be by clear and convincing evidence), disapproved on other grounds, Wilson v. Scruggs (In re Estate of Smith), 685 So.2d 1206 (Fla.1996).
On the other hand, Adrian and Evelyn have a privacy interest they seek to protect. In considering the weight to afford that interest, several factors are important. First, the intrusion is minimal — the test Madelin seeks is noninvasive, and the purpose of the test is limited to comparing her DNA to theirs. Second, rule 1.360(a)(3) provides that the court, upon request, may establish protective rules governing an examination. Thus far, Adrian and Evelyn have only asserted a generalized complaint that submitting a DNA sample invades their privacy, however, if they are able to articulate any specific privacy concern, they have the ability to ask the court to fashion protective rules to address that concern. Third, Adrian and Evelyn have affirmatively denied that Madelin is Doe’s child, and they have actively opposed all efforts by her or Maria to prove that they are his children. Having taken that position, it is questionable whether they should be permitted to withhold the evidence that may put Madelin’s *142 claim and their defense to rest once and for all. They have the alternative of conceding that Madelin is a beneficiary should they wish to avoid the test.
We grant the petition and quash the order.
ALTENBERND, J., Concurs.
SILBERMAN, J., Concurs in part and dissents in part with opinion.

. A buccal swab is a cotton-tipped device used to collect cheek cells from the inside of an individual's mouth.

. The names of the parties and the other persons mentioned in the caption and in the recitation of the facts of this case are fictitious. We use fictitious names in this opinion to protect the privacy of the individuals involved.

. Section 742.12 provides in pertinent part:
742.12. Scientific testing to determine paternity.—
(1) In any proceeding to establish paternity, the court on its own motion may require the child, mother, and alleged fathers to submit to scientific tests that are generally acceptable within the scientific community to show a probability of paternity. The court shall direct that the tests be conducted by a qualified technical laboratory.
(2) In any proceeding to establish paternity, the court may, upon request of a party providing a sworn statement or written declaration as provided by s. 92.525(2) alleging paternity and setting forth facts establishing a reasonable possibility of the requisite sexual contact between the parties or providing a sworn statement or written declaration denying paternity and setting forth facts establishing a reasonable possibility of the nonexistence of sexual contact between the parties, require the child, mother, and alleged fathers to submit to scientific tests that are generally acceptable within the scientific community to show a probability of paternity. The court shall direct that the tests be conducted by a qualified technical laboratory.

. Section 732.108(2)(b) provides:
(2) For the purpose of intestate succession in cases not covered by subsection (1), a person born out of wedlock is a lineal descendant of his or her mother and is one of the natural kindred of all members of the mother's family. The person is also a lineal descendant of his or her father and is one of the natural kindred of all members of the father's family, if:
(b) The paternity of the father is established by an adjudication before or after the death of the father.

. Section 760.40 provides:
Genetic testing; informed consent; confidentiality; penalties; notice of use of results.—
(1) As used in this section, the term “DNA analysis" means the medical and biological examination and analysis of a person to identify the presence and composition of genes in that person's body. The term includes DNA typing and genetic testing.
(2)(a) Except for purposes of criminal prosecution, except for purposes of determining paternity as provided in s. 409.256 or s. 742.12(1), and except for purposes of acquiring specimens from persons convicted of certain offenses or as otherwise provided in s. 943.325, DNA analysis may be performed only with the informed consent of the person to be tested, and the results of such DNA analysis, whether held by a public or private entity, are the exclusive property of the person tested, are confidential, and may not be disclosed without the consent of the person tested. Such information held by a public entity is exempt from the provisions of s. 119.07(1) and s. 24(a), Art. I of the State Constitution.
(b) A person who violates paragraph (a) is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.
(3)A person who performs DNA analysis or receives records, results, or findings of DNA analysis must provide the person tested with notice that the analysis was performed or that the information was received. The notice must state that, upon the request of the person tested, the information will be made available to his or her physician. The notice must also state whether the information was used in any decision to grant or deny any insurance, employment, mortgage, loan, credit, or educational opportunity. If the information was used in any decision that resulted in a denial, the analysis must be repeated to verify the accuracy of the first analysis, and if the first analysis is found to be inaccurate, the denial must be reviewed.

. For example, section 943.325(8), Florida Statutes provides for the involuntary collection of DNA samples and even authorizes the use of reasonable force if necessary; section 943.325(13) provides for the results of DNA analysis performed under that section to be placed in a statewide database accessible by an assortment of criminal justice agencies; section 742.12(3), Florida Statutes provides that the results of tests ordered pursuant to that section be filed in the court file.

. On its face, section 760.40 is silent regarding when DNA testing may be ordered. The legislative history, likewise, is silent on the issue of whether or when a court may order DNA testing. According to the legislative history, the purpose of the statute was to provide confidentiality for the results of genetic testing akin to the statutory confidentiality afforded to medical records. See Fla. S. Comm, on Judiciary, CS/SB 980 (1992) Staff Analysis (Feb. 28, 1992) (Fla. State Archives).

. For example, section 760.40 omits section 742.12(2), which provides for court-ordered scientific testing at the request of a party in a paternity action and section 742.18, which provides for scientific testing to disestablish paternity. Additionally, DNA testing is sometimes ordered in family law cases, a fact recognized in Florida Family Law Rule 12.360, which explains that in a family law case a request under rule 1.360 may include, among other things, a request for genetic testing. The petitioners’ reading of the statute as one *139 directed to what a court may or may not do would make it a misdemeanor for labs to perform the court-ordered DNA tests under these circumstances, and presumably would make it a misdemeanor for a judge to order it. Additionally, because the statute exempts only “criminal investigations,” arguably it would be a misdemeanor to use DNA analysis to investigate juvenile offenses that are "delinquent acts” rather than crimes.